## Richmond

LOUIS ADELMAN ASSOCIATES, INC. v. CHARLES L. GOLDSTEN, ET AL.

April 28, 1969.

Record No. 6863.

Present, All the Justices.

*A. B. McMurtrie, Jr. (Ernest H. Dervishian; Dervishian & Hutzler,* on brief), for appellant.

*Alan G. Fleischer (Hirschler and Fleischer,* on brief), for appellees.

SNEAD, J., delivered the opinion of the court.

This appeal by Louis Adelman Associates, Inc., complainant, resulted from the entry of a decree on May 17, 1967, which denied complainant's prayers in its bill, amended bill and a motion filed against Charles L. Goldsten, Robert E. Goldsten, Louis S. Herrink, Jr., and Belleau Wood Apartments, Inc., defendants, for the appointment of a receiver for Belleau Wood and for injunctive relief.

The record shows that Louis Adelman in June, 1963 contracted to purchase a parcel of real estate adjoining the Marine Base at Quantico, Virginia. The contract was thereafter assigned to Louis Adelman Associates, Inc., of which Louis Adelman is president and

principal stockholder. The corporation purchased the property for $16,000. Adelman approached Goldsten Brothers, a partnership composed of Charles L. Goldsten, Robert E. Goldsten and Leonard Goldsten who were experienced contractors and developers, and on December 30, 1964 Adelman Associates and Goldsten Brothers entered into a joint venture agreement for the construction of a 170 unit apartment building on the tract.

Under this agreement complainant would convey the property to the joint venture or to a trustee for the use of the joint venture, and Goldsten Brothers would cause to be prepared drawings and specifications for the project to contain 170 apartments subject to the approval of both parties and prepare the necessary documents to make application for a loan to finance the project. The agreement further provided that the parties would transfer their interests in the joint venture to a "straw" or nominee, which "shall execute the necessary loan documents and thereafter re-convey said interest to their respective owners", and that Adelman Associates and Goldsten Brothers shall each be the owner of a one-half undivided interest in the property and assets of the joint venture.

The agreement also provided:

"On behalf of the joint venture, Goldsten shall supervise the proper construction of the apartment project on said land, in accordance with the approved drawings and specifications, and shall devote whatever time thereto as may be reasonably required to the end that such construction is done and performed in an economical manner, and to the best interest of the joint venture. On behalf of the joint venture, Goldsten shall arrange for the letting of all contracts required for such construction, purchasing of materials, employment of labor, payment of all construction costs, and generally, to cause said apartment project to be erected and completed without unnecessary delays."

On October 1, 1965, there was an addendum to the joint venture agreement which permitted Goldsten Brothers "to withdraw from the proceed (sic) of a proposed loan from Chase Manhattan Bank, a sum equal to six percent (6%) of the full amount of the loan as finally negotiated", to be used to reimburse itself for expenses incurred in connection with securing the loan "but need not be limited to this use". Goldsten Brothers was not "required to account for the expenditure of said sum". The parties agreed that the terms of the

proposed loan were acceptable, and Goldsten Brothers was author-ized to sign all documents necessary to accept the commitment and to close the loan.

The minutes of Belleau Wood introduced in evidence show that at the first meeting of the stockholders held on April 27, 1966, Louis Adelman, Louis S. Herrink, Jr., Charles S. Goldsten and Robert E. Goldsten were elected directors. At the first meeting of the di-rectors held on the same day, after the stockholders' meeting, the following officers were elected: Charles L. Goldsten, president, Louis Adelman, vice-president, Louis S. Herrink, Jr., secretary, Robert E. Goldsten, assistant secretary, and Leonard Goldsten, assistant secre-tary and treasurer. At the time of the hearing in the court below, the corporate minutes reflected no changes in the personnel of directors and officers.

According to the minutes of the meeting of the board of directors held on April 27, 1966, the president of Belleau Wood reported that, "acting on behalf of the joint venture", Belleau Wood had received a commitment from Chase Manhattan Bank, of New York, for a loan of $1,400,000 for the construction of the apartment project. The president was authorized to execute on behalf of the corporation a note payable to Chase Manhattan for that amount and also a deed of trust on the property securing the note.

On May 3, 1966, the loan was closed in the offices of the bank. Herrink, attorney for Adelman, was present with Charles Goldsten when the transaction took place.

The bill and amended bill alleged, among other things, that the complainant, by virtue of the joint venture agreement with Goldsten Brothers, owns 10 shares which is 50 per cent of the outstanding capital stock of Belleau Wood; that Herrink, secretary of Belleau Wood, and Charles Goldsten, president, wrongfully issued the ten shares of the corporate stock to "Louis Adelman and Louis S. Her-rink, Jr." instead of to Louis Adelman Associates, Inc.; that it was nec-essary to obtain the services of another attorney to have the stock properly issued; that no legal meeting of the stockholders or directors was held after the initial directors met on March 17, 1966, at which time the directors neither elected officers nor adopted by-laws; that the officers and directors serving Belleau Wood were not legally elected; that defendant Herrink, an attorney, had since April, 1964 represented Louis Adelman, president of the complainant corporation, in various legal transactions, and that in connection with the organiza-

tion of Belleau Wood, Herrink acted contrary to instructions without advising complainant.

It was further alleged that the "Goldstens, individually and as partners, have repeatedly breached the joint venture agreement and with defendant Herrink have and continued to dominate the corporate defendant, and should not be permitted to profit thereby", and that the assets of Belleau Wood are being "misapplied and/or wasted".

The complainant prayed that the individual defendants "be enjoined *pendente lite* and permanently from exercising the powers of a director" of Belleau Wood; that the court order a meeting of the stockholders for the purpose of electing directors; that the actions of the individual defendants as "purported" directors be declared invalid until approved by directors elected pursuant to a meeting of the stockholders ordered by the court, and that a receiver *pendente lite* be appointed and thereafter a liquidating receiver.

Subsequently on April 7, 1967, the complainant filed a motion for the appointment of a receiver until a full hearing could be had. On the same day the court by order continued the motion to April 24, limited the hearing to the question of the appointment of a receiver *pendente lite* and directed that notice be served on all interested parties. The hearing consumed two days, the transcript consists of 350 pages, and numerous exhibits were filed.

Louis Adelman testified, among other things, that he was neither informed of nor present at the first meeting of the stockholders held on April 27, 1966, when the directors were allegedly elected; that some of the corporate minutes were incorrect; that he told Herrink, his attorney, he wanted Oscar Goldberg and himself named as the two directors representing complainant's 50 per cent interest in the corporation; that Herrink acted contrary to his instructions and caused himself to be named a director instead of Goldberg; that complainant's certificate for 10 shares of the capital stock of the corporation was issued by Goldsten, as president, and Herrink, as secretary, in the names of "Louis Adelman and Louis S. Herrink, Jr." instead of solely in the name of complainant corporation; that he had to employ another attorney, William H. King, to secure the proper certificate, and that the new certificate was delivered to King by Herrink upon condition that he hold it as a stakeholder.

Adelman further testified that he had not been informed that Goldsten Brothers had already received a commitment for a loan from Chase Manhattan on September 23, 1965, when complainant agreed to the addendum of October 1, 1965, authorizing Goldsten Brothers

to withdraw 6 per cent of the full amount of the loan for reimbursement of expenses incurred in connection with the loan; that he first knew of the commitment on February 17, 1966; that the plans and specifications were never submitted to complainant for its approval as required by the joint venture agreement; that he never advised Chase Manhattan that Belleau Wood was not properly organized and did nothing to prevent the closing of the loan; that Herrink represented his interest in the transaction, and that he did not discharge Herrink as his attorney until July, 1966.

Sidney L. Edwards, a certified public accountant who examined various records of Belleau Wood and Goldsten Brothers at the request of complainant, testified that the Goldsten brothers were cooperative; that he was shown ledger sheets giving a summary of construction costs and a summary of construction costs by accounts; that such a method of recording was proper; that all funds from construction draws on Chase Manhattan were deposited in an account in that bank and disbursed, and that assuming the figures exhibited to him were correct he could prepare tax returns. On cross-examination Edwards was asked:

"Q. On the basis of your examination, you are not making any statement that these books were fraudulently kept or wrongfully kept.

"A. No. * * * The answer is no.

"Q. As far as you know, they reflect the transactions.

"A. Yes."

The complainant called Charles Goldsten, president of Belleau Wood, as an adverse witness. He testified, among other things, that Goldsten Brothers had received only $26,000 out of the $84,000 due them under the addendum to the agreement and explained the disbursement of that sum; that Adelman was notified that the commitment of Chase Manhattan would be accepted before its actual acceptance, and that the plans and specifications for the apartment project were approved by Adelman and Herrink, his attorney.

Robert Goldsten, also called as an adverse witness, testified that Adelman "was definitely advised on a number of occasions as to the existence and acceptance" of the commitment for a loan, and that plans and specifications for the project were shown Adelman and Herrink as they progressed. Leonard Goldsten also stated that Adelman and Herrink reviewed the plans and specifications on numerous occasions, and that Adelman approved them.

It is evident that the prime purpose of complainant's suit was to secure the appointment of a receiver for Belleau Wood. Complainant concluded its petition for an appeal to this court in these words: "For the reasons set forth herein, the plaintiff submits that it be awarded an appeal and the final decree entered herein by the Chancery Court of the City of Richmond be set aside and the case remanded with appropriate instructions for the appointment of a receiver, both *pendente lite* and liquidating".

At the time of the hearing in the court below Code, § 13.1-94[1] provided in part:

"Any court of record, with general equity jurisdiction in the city or county where the registered office or principle office of a corporation is located, shall have full power to liquidate the assets and business of the corporation:

"(a) In an action by a stockholder when it is established:

"(1) That the directors are deadlocked in the management of the corporate affairs and the stockholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

"(2) That the acts of directors or those in control of the corporation are illegal, oppressive or fraudulent; or

"(3) That as shown by the proceedings at any meeting of the stockholders the stockholders are deadlocked in voting power and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

"(4) That the corporate assets are being misapplied or wasted."

Under Code, § 13.1-95 the court, in proceedings to liquidate the assets and business of a corporation, is empowered, among other things, to issue injunctions, to appoint a receiver or receivers *pendente lite* for the preservation of corporate assets and to carry on the corporation's business until a full hearing can be had, and thereafter to appoint a liquidating receiver.

Contrary to the order of April 27, 1967, which limited the hearing to the question of the appointment of a receiver *pendente lite*, the chancellor stated during the course of the hearing "I am considering everything, but I am not passing on anything until all the evidence is in * * *." At the conclusion of complainant's evidence, the defendants move to strike it out. After hearing argument on the motion the chancellor ruled:

---

[1] In 1968, the General Assembly amended the first paragraph of § 13.1-94 to provide for the appointment of a custodian.

"It was the agreement that Goldsten Brothers would construct the building. There has been no showing that Mr. Adelman's interest or the corporations' interest has been denied. Mr. Adelman has not been wrongfully excluded from the profits of the joint venture. There has been no proof of fraud. There is no proof of insolvency. There is no showing that continuation of the present procedures will result in insolvency or loss to the complainant.

"The Bill of Complaint asks that a receiver *pendente lite* be appointed to take full charge of the business of the defendant corporation; that the persons in control of the defendant corporation be enjoined *pendente lite* and permanently from exercising any of the powers of an officer, director, agent or employee of the defendant corporation. The result of that would obviously halt further construction of this project; it would render the completion much more costly; it would be not only damaging to Goldsten Brothers and other parties to the joint venture, but it would also damage the reputation of Goldsten Brothers, who have been in this business for many years. I think the statement was twenty-five years. It would also damage a third party, namely, Chase Manhattan Bank, an innocent party, I may add.

"The granting of a receivership for the operations would result in a greater loss than a continuation of the present operations, even if the present operations were not the most exemplary. I have no reason to believe that they should be otherwise than what they are.

"Now we come to whether the defendant has adequate remedy at law. I may add that we never argued your demurrer, Mr. Fleischer. We have passed that by. But, however, if it is demurrable I have to consider it. I have to consider whether the complainant has an adequate remedy at law and whether that remedy at law has been exhausted. I think if there is any improper conduct on the part of the individuals with whom he has made this joint venture agreement that he does have an adequate remedy at law. I find no evidence of any anticipatory breach of that contract. I find no evidence that the individual parties to the joint venture have any intention of breaching the contract. I do not find that the contract has been substantially breached as it exists now.

\* \* \* \* \* \*

"I find that I cannot appoint a receiver *pendente lite* \* \* \*."
Counsel for complainant then stated that he had no additional evi-

dence to offer in support of its prayers for the other relief sought in the bill and amended bill and requested the court to rule upon them. Due to the lateness of the hour argument was continued to a day to be agreed upon by counsel. Neither the printed record nor the transcript show whether there was any further argument, hearings, or oral rulings by the chancellor. As has been stated the final decree of the court entered on May 17, 1967, denied the prayers for the appointment of a receiver and for injunctive relief since grounds therefor had not been proven, and dismissed the cause from the docket.

The chancellor found, *inter alia*, that no irreparable injury to the corporation was being suffered; that no fraud existed; that there was no proof of waste; that the appointment of a receiver would be to the detriment of all parties concerned; and that there was no improper conduct on the part of the directors and officers to warrant the appointment of a receiver or the issuance of an injunction. The evidence was sufficient to support these findings and they are presumed to be correct. We therefore hold that the court did not err in refusing to appoint a receiver or in refusing to enjoin the individual defendants from exercising the powers of directors of the corporation.

Counsel for defendants stated at the bar of this court during oral argument that construction of the apartments had been completed and that complainant and defendants had agreed upon an agent to manage the rental of the apartments. Under the terms of the joint venture agreement Belleau Wood, the "straw" to which the property was conveyed, is required to reconvey the assets of the corporation to complainant and Goldsten Brothers according to their respective interests. There is appropriate procedure available to compel, if necessary, such a conveyance.

While the record does not show that the chancellor specifically ruled on the prayers that the court order a meeting of the stockholders for the purpose of electing directors and that the actions of the "purported" directors be declared invalid, in view of the fact that the parties to the joint venture agreement are now entitled to have the assets of Belleau Wood conveyed to them, we will not remand the case for a specific ruling on these points. In any event complainant is not barred by the decree from seeking damages in an action at law, if it be so advised.

The decree appealed from is

*Affirmed.*