## 73821. NATIONWIDE GENERAL INSURANCE COMPANY v. PARNHAM.
### (357 SE2d 139)

BEASLEY, Judge.

We granted an interlocutory appeal to Nationwide, the uninsured/underinsured motorist carrier, from the denial of its motion for summary judgment in a suit for personal injuries which Parnham, its insured, brought jointly against the insurance company, the operator of a taxi allegedly involved in Parnham's injury, and Safari Cab Company, the taxi owner.

Texas resident Parnham was injured when his right knee was pinned between the Safari taxi and another taxi at the Atlanta International Airport, at a time when the Safari taxi was self-insured with limits of liability of $10,000 per person. Also at the time, Parnham was the named insured in a Texas Personal Auto Policy issued in Texas by Nationwide which policy included uninsured/underinsured motorist coverage of $100,000 per person. Parnham served Nationwide for benefits of the Texas policy's uninsured/underinsured coverage over and above the $10,000 per person limit of Safari's self-insurance pursuant to OCGA § 33-7-11 (d). Nationwide elected to participate directly in the suit in its own name to contest its liability.

It moved for summary judgment on the basis that the taxi was self-insured and that the policy specifically excluded from the definition of "uninsured motor vehicle" any vehicle or equipment "owned

or operated by a self-insurer under any applicable motor vehicle law." Nationwide maintained that the language as interpreted under Texas law mandated that Parnham's coverage could not apply because the taxi was self-insured so that as a matter of law coverage did not arise.

The insurer argues error in failing to uphold the exclusion in the Texas policy. Parnham, on the other hand, contends that the exclusion is invalid as violative of the purpose of the Texas law governing uninsured/underinsured motorist coverage in that it is contrary to its intent. It is his further position that for this state to uphold the exclusion would amount to a denial of equal protection of the laws under the federal constitution, i.e., treating differently those injured by self-insured motorists as opposed to those injured by motorists with no insurance or minimal coverage through an insurance company. Additionally, he urges that it is against the public policy of either Texas or Georgia to allow him to go "uncompensated" under the facts of this case.

The final argument is that the exclusion conflicts with another section of the policy dealing with out-of-state coverage which would permit him to recover the higher limit of liability under OCGA § 33-7-11. We examine these bases for upholding the denial of summary judgment.

1. Nationwide's potential liability is one of law for the court. While it is true that "the statutory/judicial scheme which has evolved requires a determination of the uninsured motorist's tort liability before a UMC can be held accountable on its contractual obligation to its insured," *Smith v. Phillips*, 172 Ga. App. 459, 460 (1) (323 SE2d 669) (1984), if there is no possibility of coverage under the language of the policy and if the exclusion is valid, the insurer has no further role as a party in the suit.

2. Both the insurer and Parnham agree that Texas law should be applied to the insurance contract in this case. The trial court's order is silent on what law it applied in reaching the determination to deny summary judgment to Nationwide. However, we agree that Texas law is properly applied in evaluating the policy exclusion inasmuch as at the time of alleged injury Parnham was a Texas resident, the policy was issued and delivered in Texas, and there was nothing in the policy to indicate that it was intended to be construed as a Georgia contract. *Tennessee Farmers Mut. Ins. Co. v. Wheeler*, 178 Ga. App. 73, 74 (1) (341 SE2d 898) (1986).

3. The claimant maintains that the policy exclusion for self-insured vehicles or equipment contravenes the purpose and intent of the Texas uninsured/underinsured motorist law, yet no supportive authority is offered for such proposition. In fact, Parnham quite accurately notes that the purpose of this law, V.A.T.S. Insurance Code, Art. 5.06-1, was not to protect insureds from all negligence of unin-

sured motorists but rather to protect conscientious and thoughtful motorists against losses caused by negligent, financially irresponsible motorists. This is confirmed in *Francis v. Intl. Svc. Ins. Co.*, 533 SW2d 408, aff'd 546 SW2d 57 (1976). A self-insured who complies with the self-insurance law, OCGA §§ 33-34-2 (12) and 40-9-101 (a), is not financially irresponsible but rather is meeting the state's required minimum. The self-insurer does not become financially irresponsible just because it chooses the state-permitted option not to insure above the minimum.

Nor can it be said that to uphold the policy exclusion is to deny equal protection under the federal constitution to those injured by self-insureds, because this is not a situation of uneven or unequal application of the Texas statutory scheme of uninsured/underinsured motorist coverage, but rather the enforcement of a contractual provision not shown to be offensive to Texas law.

4. The issue then becomes whether the exclusionary provision of the Texas insurance policy, not shown to be unlawful in Texas, will be enforced in our state courts.

Pretermitting the question of whether such an exclusion in a Georgia insurance policy would be enforceable under our law governing coverage of claims against uninsured motorists, OCGA § 33-7-11, and assuming arguendo that such an exclusion would not be favored under our law for the reasons Parnham suggests, without more this Court would not be required to find the foreign contract unenforceable.

It is our policy to enforce contracts made and performed in another state unless such state's laws are contrary to our public policy. OCGA § 1-3-9; *Terry v. Mays*, 161 Ga. App. 328 (291 SE2d 44) (1982).

Furthermore, " ' "[a] contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears." ' [Cit.] . . . 'Enforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a "strong case" for such action is presented; mere dissimilarity of law is not sufficient for application of the public policy doctrine. A contract is not necessarily contrary to the public policy of a state merely because it could not validly have been made there, notwithstanding the making of such contracts in the place of the forum is expressly prohibited by statute.' [Cits.]" Id. at 328 (1).

In the circumstances of this case, where a Texas resident is claiming coverage under a Texas insurance policy and where the self-insured is maintaining the minimum coverage required under our law, we discern no prejudice to the public interest in Georgia by enforcing the exclusionary provision in the Texas insurance policy. Therefore,

826

the trial court erred in refusing to enforce the exclusion and in thus failing to grant summary judgment to the insurer.

*Judgment reversed. McMurray, P. J., and Sognier, J., concur.*

DECIDED APRIL 22, 1987 —
REHEARING DENIED MAY 7, 1987 —

*Philip M. Casto*, for appellant.
*Irwin M. Ellerin, Sidney L. Moore, Jr.*, for appellee.