# BETHLEHEM STEEL CORPORATION

## v.

# WILLIAMS INDUSTRIES, INC., ET AL.

Record No. 920394

January 8, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, Keenan, JJ., and Poff, Senior Justice

*Leslie M. Alden (John B. Connor; James F. Hibey; Verner, Liipfert, Bernhard, McPherson and Hand,* on briefs), for appellant.

*Darwyn H. Lesh (Patrick Boland,* on brief), for appellee Williams Industries, Inc.

*Michael A. Grow* for appellee Atlas Machine and Iron Works, Inc.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this appeal is whether the trial court erred in appointing a receiver to supervise and conserve a debtor's assets and in enjoining a secured creditor from foreclosing on the assets.

The factual background and procedural history of this case are quite convoluted and span more than a decade. By a deed of trust dated October 24, 1980, and amended by an instrument dated October 12, 1982, Atlas Machine & Iron Works, Inc. (Atlas), conveyed to certain trustees a 54-acre tract of land located in Gainesville, Prince William County, to secure the payment of its multi-million dollar debt owed to Bethlehem Steel Corporation (Bethlehem). By 1984, Atlas had defaulted on this debt, which then exceeded $16,000,000.

As a result of the default, on April 20, 1984, Bethlehem and Atlas entered into a plan of liquidation of Atlas' assets (the Liquidation Agreement), which provided that Atlas would promptly liquidate enough of its assets to curtail the debt, suspend indefinitely its fabricating operations, and preserve and protect its assets so that they would be available to satisfy the debt. In return, Bethlehem agreed to forebear collection efforts as long as no "event of insecurity" occurred, as that term was defined in the Liquidation Agreement, and to cease the accrual of or demand for interest on the debt.

Atlas subsequently defaulted under the terms of the Liquidation Agreement, and Bethlehem initiated state court proceedings to recover assets. Atlas, in turn, instituted an action against Bethlehem in the United States District Court for the Eastern District of Virginia, alleging antitrust violations, to which action Bethlehem counterclaimed.

In July 1987, Bethlehem sought to foreclose on Atlas' Gainesville property pursuant to the deed of trust. Thereupon, on July 20, 1987, Williams Industries, Inc. (Williams), the owner of 41.6% of Atlas' outstanding stock, initiated the present suit. Among the defendants named in Williams' bill of complaint were Bethlehem, Atlas, and Werner H. Quasebarth, Atlas' chief executive officer.

Williams sought to enjoin Bethlehem's impending foreclosure and to have a conservator appointed to manage Atlas' remaining assets. Williams alleged that Atlas, Quasebarth, and Bethlehem had wrongfully and fraudulently conspired to ignore Atlas' obligations under the Liquidation Agreement.

Answering the bill of complaint, Atlas denied any need for a conservator. Atlas also filed a counterclaim against Williams, a third-party suit against Williams' president, Frank E. Williams, Jr., and a cross-bill against Bethlehem. Bethlehem answered the bill of complaint, denying any wrongdoing. On July 29, 1987, the trial court granted a temporary injunction, barring foreclosure by Bethlehem "until further order of this Court."

On May 16, 1988, Bethlehem and Atlas agreed to a settlement of the litigation pending in the federal district court (the Settlement Agreement). In this Settlement Agreement, Bethlehem and Atlas stated that it was their "desire to resolve and to settle all the claims and disputes between them." Atlas again acknowledged its debt to Bethlehem and agreed to pay Bethlehem in full on or before April 20, 1990. In return, Bethlehem agreed to forebear its right to collect the debt until that date.

Atlas, however, failed to pay the debt by April 20, 1990. Thereupon, Bethlehem moved the trial court in the present case to dissolve the temporary injunction. Williams, on the other hand, requested the court to make the injunction permanent.

On August 16, 1990, the trial court conducted an *ore tenus* hearing on these two motions, and, by a decree entered August 24, 1990, the court ordered that "the temporary injunction be made permanent pending a full and final adjudication of this case on the merits." In doing so, the trial court found that (1) irreparable harm would result to Williams if the injunction were dissolved, (2) foreclosure on Atlas' property could result in a diminution of sale proceeds, and (3) Williams did not have an adequate remedy at law.

Shortly before the present case was to have been tried on its merits, Williams and Bethlehem settled all disputes between them. Thus, by two decrees entered July 2, 1991, Bethlehem was dismissed as a party to the suit, and the permanent injunction was dissolved.

Thereafter, and unbeknownst to Bethlehem, Williams and Atlas settled their suit. The settlement agreement provided that, in return for the nonsuit of Williams' claims against Quasebarth and of Atlas' claims against Williams and Frank E. Williams, Jr., Atlas agreed to

submit its assets to the jurisdiction of the court and to the appointment of a conservator for an initial three-year term. The conservator would supervise and conserve Atlas' assets for disposition pursuant to a proposed Conservation of Assets Plan (the Plan). The proposed Plan was set forth in the trial court's decree entered July 17, 1991.

Upon receipt of notice that the court proposed to adopt the Plan, Bethlehem filed objections to it and asked the court to reject it. However, following a hearing on the objections, the trial court entered a decree on December 20, 1991, overruling all objections and adopting the Plan as proposed. In adopting the Plan, the trial court enjoined both secured and unsecured creditors of Atlas from "further collection or enforcement efforts" against Atlas' assets. Bethlehem's appeal ensued.

■■■ A court's power to appoint a receiver should be exercised with caution and only in a strong case.* *Norris* v. *Lake*, 89 Va. 513, 518, 16 S.E. 663, 665 (1893). Generally, therefore, a court of equity is not empowered to appoint a receiver for a corporation, absent proof of insolvency, fraud, waste, or improper conduct. *See Adelman Associates* v. *Goldsten*, 209 Va. 731, 738, 167 S.E.2d 104, 109 (1969). Even when a court exercises its power and appoints a receiver, the court's control must be temporary. *Brennan* v. *Rollman*, 151 Va. 715, 731, 145 S.E. 260, 265 (1928). Furthermore, the appointment of a receiver "does not affect vested rights or interests of third persons in property which is the subject of the receivership, or disarrange the order of priority of existing liens." *Peoples Nat'l Bank* v. *Va. Textile Co.*, 104 Va. 34, 37, 51 S.E. 155, 156 (1905); *accord Rawls* v. *Forrest*, 224 Va. 264, 267, 295 S.E.2d 791, 793 (1982).

■ The trial court's factual basis for appointing the receiver is stated in the decree setting forth the Plan:

It is this Court's finding of fact that the value of Atlas' [Gainesville] real property . . . will be enhanced and the interests of all parties will be promoted by utilizing a carefully planned disposition which includes appropriate rezoning and development, if appropriate, prior to sale.

---

* The Plan refers to a "conservator/trustee." All parties agree that the appointment of a conservator and the appointment of a receiver are legally the same.

The trial court stated that the purpose of the Plan "is to conserve all of Atlas' assets . . . until the highest yield can be obtained from liquidation, disposition, transfer or other use of those assets, thereby benefiting the creditors of Atlas, both secured and unsecured . . . ."

Pursuant to the Plan, "the [receiver's] responsibility will be to prepare and develop the real property owned by Atlas . . . for the purpose of sale, disposition, transfer or other use." The Plan empowered the receiver to

> take whatever steps are necessary to obtain appropriate governmental approvals for the rezoning and for site plan development if he deems it beneficial to the creditors and shareholders of Atlas, and such other steps required to insure the proper marketing of the real property to yield the highest return on the sale thereof.

The initial term of the Plan was three years. However, the trial court stated that "[i]f at the end of the three year period it is evident that additional time will be required to realize the purposes of this Plan, then the Court may extend the Plan for an additional one year or such additional time as may be appropriate under the then existing circumstances."

Williams does not claim that Atlas is insolvent, and there is no evidence of insolvency in the record. Nor is there any evidence to support a finding of fraud, waste, or any other improper conduct. Clearly, the trial court's factual findings do not provide a basis for the appointment of a receiver or for enjoining Bethlehem from proceeding with foreclosure under the deed of trust. Additionally, the receivership was not temporary. Its initial term was three years, and it could have been extended indefinitely. Thus, we hold that the trial court erred in adopting the Plan.

Accordingly, we will reverse and vacate the decree of December 20, 1991, nullify the Plan as set forth in the decree of July 17, 1991, and enter final judgment in favor of Bethlehem.

*Reversed and final judgment.*