**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0567. TETRA TECH TESORO, INC. v. JAAAT TECHNICAL
    SERVICES, LLC et al.
A16A0609. TETRA TECH TESORO, INC. v. JAAAT TECHNICAL
    SERVICES, LLC et al.

BRANCH, Judge.

In the role of subcontractor, Tetra Tech Tesoro, Inc. (Tesoro), a Virginia corporation, entered into two identical subcontracts, which it drafted, for work to be performed at federal installations in Georgia. The prime contractor was also a Virginia entity, and Tesoro included within the subcontracts Virginia choice-of-forum and choice-of-law clauses. Later, based on the prime contractor's alleged breach of each contract, Tesoro filed separate actions in two Georgia courts and argued that under Georgia law, the forum selection clause was not enforceable. In these consolidated appeals, Tesoro appeals the orders entered in each case, which granted

the defendants' motion to dismiss for lack of venue based on the Virginia choice of forum clause found in each agreement. For the reasons that follow, we affirm.

We review de novo a trial court's ruling on a motion to dismiss based on a forum selection clause. *Crump Ins. Svcs. v. All Risks, Ltd.*, 315 Ga. App. 490, 491 (727 SE2d 131) (2012); *Carson v. Obor Holding Co.*, 318 Ga. App. 645, 646 (734 SE2d 477) (2012); see also *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990) (On a motion to dismiss for lack of jurisdiction, the defendant may rely on evidence not contained in the pleadings and the plaintiff may rebut that evidence, but in that event, absent oral testimony, "the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.").

Unless otherwise stated, the facts recited herein are not in dispute. Tesoro, a Virginia corporation with its principal place of business in Virginia, is a federal contractor. During 2011 and 2012, Tesoro, as the subcontractor, entered into two of five separate subcontracts with federal contractor JAAAT Technical Services, LLC., a Virginia company with its principal place of business in Virginia, to construct military operations facilities at various army bases in North Carolina and Georgia; the two subcontracts at issue in this appeal concern construction projects at Fort Gordon

2

and Fort Benning in Georgia. In each of these two subcontracts, which were drafted by Tesoro, the two Virginia companies agreed to identical Virginia choice of forum and choice of law provisions as follows:

> SUBCONTRACTOR agrees that all other claims related in any way or manner to the Subcontract Work or this Subcontract not included in subparagraphs 15.1 or 15.2 [1], above, shall be litigated in the Circuit Court of the City of Hopewell, Virginia, or the United States District Court for the Eastern District of Virginia, Richmond Division, regardless of the location of SUBCONTRACTOR'S work or the Project. The parties hereto expressly consent to the jurisdiction and venue of said Courts and acknowledge that they may be waiving rights they might otherwise have to bring suit in any other venue. The parties further agree that all disputes under this Subcontract shall be determined and interpreted pursuant to the laws of the Commonwealth of Virginia.

With regard to the Fort Gordon and Fort Benning projects, all construction activities associated with the subcontracts occurred on the military bases in Georgia.

In December 2014, Tesoro filed two almost identical actions in Georgia against JAAAT and two of JAAAT's managerial employees concerning the Fort Gordon and Fort Benning subcontracts, respectively; the Fort Gordon suit was filed in Richmond

---

[1] None of the parties contend these subparagraphs apply to Tesora's claims.

County, while the Fort Benning suit was filed in Chattahoochee County.[2] Tesoro alleged that, in each case, JAAAT failed to fully pay for work performed by Tesoro and that Tesoro was entitled to certain subcontract adjustments for the cost impact of additional, changed, and extra work. Tesoro also alleged that JAAAT knowingly made false certifications to the federal government concerning payments to subcontractors on the projects; that JAAAT failed to establish separate deposit accounts for each project for the receipt of deposits by the federal government, from which subcontractors were to be paid on each project; and that JAAAT commingled contract funds, which was prohibited by the subcontracts. Based on these allegations, Tesoro brought claims in each suit for breach of contract, breach of fiduciary duty, breach of an implied covenant of good faith and fair dealing, conversion, unfair and deceptive trade practices, civil conspiracy, and unjust enrichment. In addition to damages, Tesoro sought the imposition of a constructive trust on subcontract funds received by JAAAT from the federal government, an accounting, punitive damages, injunctive relief, and a declaration that Tesoro had a right to stop work. Tesoro did not seek a receiver in its complaint, but several weeks later, Tesoro filed a motion in

---

[2] Tesoro apparently filed suit on its three other subcontracts in North Carolina. JAAAT has filed a single lawsuit arising out of all five subcontracts in the United States District Court for the Eastern District of Virginia.

each case, requesting, among other things, that the trial court appoint a receiver "to manage the assets and funds associated with the . . . project during the pendency of the litigation."

In response to the complaints, JAAAT and the individual defendants moved to dismiss each suit on the ground that the court lacked personal jurisdiction and that venue was improper. With regard to personal jurisdiction, the defendants argued that they did not have any contacts or transact any business in Georgia because the two forts are federally owned and operated military bases subject to the jurisdiction of the United States Government, i.e., federal enclaves "over which Georgia has ceded jurisdiction to the federal government." The defendants further argued that all of the conduct alleged in the complaint occurred either on these federal enclaves or in Virginia. JAAAT and the individual defendants also argued that venue was proper in Virginia as a consequence of the forum selection clauses.

Following a hearing , each court issued a written order granting the defendants' motion to dismiss. In the Fort Gordon case, the Superior Court of Richmond County held that the enforceability of the forum selection clause should be decided under federal law given that Fort Gordon is a federal enclave; that "[t]he core of Tesoro's allegations stem from the fact that it was purportedly not paid for work it performed

on Fort Gordon"; that "Tesoro has not presented any evidence showing that the events giving rise to [the] litigation occurred anywhere but on the federal enclave"; that under federal law, forum selection clauses are enforced absent "exceptional circumstances"; that Tesoro presented no evidence of exceptional circumstances; and that the result would be the same under Georgia law. Accordingly, the trial court enforced the forum selection clause and dismissed the Richmond County action. In Case No. A16A0567, Tesoro appeals that decision.

In the Fort Benning case, the Superior Court of Chattahoochee County held that it was undisputed that Fort Benning was a federal enclave; that Georgia has adopted federal law regarding the enforceability of forum selection clauses; that under that law, absent fraud, undue influence, or overweening bargaining power, such clauses should be enforced unless the chosen forum would be so inconvenient as to deny the litigant of his day in court; that given that the parties were based in Virginia and executed the contracts in Virginia, a Virginia forum was not inconvenient; and that there was no evidence of undue influence or fraud in connection with the forum selection clause. Accordingly, the trial court enforced the forum selection clause and dismissed the Chattahoochee County action. In Case No. A16A0609, Tesoro appeals

6

that decision. This Court has consolidated the two cases for purposes of appeal.[3] We affirm, but for reasons different from those stated by the trial courts below.

1. The essence of Tesoro's argument on appeal is that enforcement of the parties' forum selection clause would contravene Georgia public policy because if the suits were filed in Virginia, Tesoro would lose a remedy[4] available in Georgia that is

---

[3] After the present appeals were docketed in this Court, the United States District Court of the Eastern District of Virginia addressed a related issue raised in that court by Tesoro in JAAAT's suit against Tesoro for breach of contract arising out of the same contracts at issue here as well as the related contracts concerning Fort Bragg in North Carolina. See *JAAAT Tech. Svcs., LLC v. Tetra Tech Tesoro, Inc.*, (Case No. 3:15CV235, decided Mar. 29, 2016) (E.D. Va.). In that action, JAAAT argued that the District Court had subject matter jurisdiction of the action pursuant to the federal enclave doctrine, and Tesoro moved to dismiss on the ground that "subject matter jurisdiction [did] not exist because JAAAT's breach of contract claims [did] not arise under federal law." Id. at __ (III) (emphasis omitted). The District Court noted that for the purposes of its motion, Tesoro conceded "that the Military Bases constitute federal enclaves" and that Tesoro did not refute JAAAT's assertion that "the federal government possesses exclusive legislative power over the Military Bases." Id. The District Court held that despite the parties' agreement to apply Virginia law to their disputes arising under the five contracts, the federal law applicable to the military bases "supersedes the application of state law." Id. Accordingly, the District Court held that "[b]ecause the events giving rise to JAAAT's claims occurred on the Military Bases, the Court finds that JAAAT's claims arise under federal law" and therefore the District Court had subject matter jurisdiction for JAAAT's claims. Id. at __ (III) (A).

[4] See generally *Peterson v. Wade*, 222 Ga. 805, 810 (1) (b) (152 SE2d 745) (1966) ("As to remedies, the law of the forum prevails.") (citation and punctuation omitted).

7

not available in Virginia, namely, the right to have the trial court appoint a receiver to manage the assets and funds associated with the project during the pendency of the litigation. To proceed, we must first determine whether Georgia, Virginia, or federal law should be applied to determine the enforceability of the forum selection clause.

(a) Setting aside the question of federal law for the moment, in general, the law of the forum, in this case Georgia, governs the enforceability of a forum selection clause despite the parties' choice to have Virginia law apply to disputes arising under the subcontracts:

> The enforceability of the forum selection clauses is a procedural issue which, under the rule of lex fori, requires application of the law of Georgia (where suit was filed), even though the [parties'] agreements also contain choice of law clauses requiring application of [another state's] law.

*Lapolla Indus. v. Hess*, 325 Ga. App. 256, 265 (3) (750 SE2d 467) (2013) (citation omitted). Instead of Georgia law, however, JAAAT counters that federal law should govern the enforceability of the forum selection clause given that the contract work was performed on a federal enclave and that, therefore, we need not examine whether the clause contravenes Georgia public policy. But our reading of federal law suggests that the question of the enforceability of a forum selection clause under federal law

8

would also require us to examine Georgia public policy.[5] Thus, pretermitting whether federal law should be applied (including the possible application of the federal enclave doctrine), we will address Tesoro's argument that the parties' forum selection clause contravenes Georgia public policy.

(b) As explained below, because Tesoro has failed to make a strong case showing that enforcement of the forum selection clause that it drafted would contravene a Georgia public policy, the clause is enforceable, and we therefore affirm the trial courts' dismissal of Tesoro's Georgia actions.

"[P]ublic policy may afford a compelling reason to avoid a forum-selection clause, at least to the extent that proceedings in the selected forum are likely to produce a result that offends a settled public policy of Georgia." *Carson v. Obor Holding Co.*, 318 Ga. App. at 648 (citations omitted). To invalidate such a clause,

---

[5] See generally *Stewart Org. v. Ricoh Corp.*, 487 U. S. 22, 30 (III) (B) (108 SCt 2239, 101 LE2d 22) (1988) (when an Alabama federal district court sitting in diversity is determining whether to uphold the parties' choice of forum clause, the court may consider Alabama public policy that might refuse to enforce forum-selection clauses providing for out-of-state venues); *The Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1, 15 (92 SCt 1907, 32 LE2d 513) (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.") (citation omitted); *Estate of Myhra v. Royal Caribbean Cruises*, 695 F3d 1233, 1240 (A) (11th Cir. 2012).

Tesoro bears the burden of making a "strong case" "free from substantial doubt" that enforcement of the clause would prejudice the public interest:

> A contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears. . . Enforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a "strong case" for such action is presented; mere dissimilarity of law is not sufficient for application of the public policy doctrine.

*CS-Lakeview at Gwinnett v. Simon Prop. Group*, 283 Ga. 426, 428 (659 SE2d 359) (2008) (citations and punctuation omitted); see also *SR Bus. Svcs. v. Bryant*, 267 Ga. App. 591, 592 (600 SE2d 610) (2004) (party seeking to invalidated a forum selection clause "bears the burden of proving that enforcement of the forum selection clause would be unreasonable under the circumstances") (citation omitted).

Tesoro asserts that there is a settled Georgia public policy "to protect materialmen [and subcontractors] by requiring general contractors to pay materialmen [and subcontractors] for the services they have provided once the contractor has itself received payment." Tesoro argues that this public policy is reflected in Georgia laws that provide for (1) materialman's liens, OCGA § 44-14-361 (a) (2); (2) criminal sanctions for contractors who unlawfully retain project funds that were meant to pay

10

for labor, service, or materials on a project, OCGA § 16-8-15; and (3) the remedy of a receiver "to take possession of and hold . . . any assets charged with the payments of debts where there is a manifest danger of loss, destruction, or material injury to those interested," OCGA § 9-8-3. Tesoro then asserts that it has made a strong case of showing that enforcement of the forum selection clause would contravene Georgia public policy because Virginia "does not afford the remedy of receivership under similar circumstances." As Tesoro argues, "if this case were to go to Virginia, the relief that is necessary and available under Georgia law would not be afforded to [Tesoro]." Even assuming that Georgia law reflects a Georgia public policy in favor of protecting subcontractors as Tesoro claims, which we do not decide, Tesoro has failed to show that applicable remedies under Virginia law would be different. Thus, Tesoro's argument is without merit.

First, Tesoro admits that it, in fact, is not entitled to a materialman's lien under Georgia law. Moreover, Tesoro fails to acknowledge that Virginia, like Georgia, has a materialman's lien statute. See Va. St. 43-1 et seq. Thus, Tesoro has shown no difference between Virginia and Georgia law on this first point as applied to this case. Next, Tesoro offers no comparison of Virginia and Georgia criminal law that might be applicable to subcontractor disputes other than citing a single Georgia criminal

11

statute, nor does it cite authority to show that a single Georgia criminal statute creates a Georgia public policy sufficient to invalidate a choice of forum clause. Finally, Tesoro's assertion on the point on which it most strongly relies — that Virginia does not offer the remedy of appointment of a receiver under the present circumstances — is based on a cursory review of Virginia law and fails to support Tesoro's position.

Tesoro asserts that because there is no allegation that JAAAT is insolvent, Tesoro would not be entitled to a receiver under Virginia law. But Tesoro's only authority for this assertion, *C. F. Trust, Inc. v. First Flight Ltd. Partnership*, 140 FSupp.2d 628 (E.D. Va. 2001), as amended (Apr. 26, 2001), aff'd, 338 F3d 316 (4th Cir. 2003), is a non-binding federal case,[6] that states without direct citation that "under Virginia law, the appointment of a receiver is generally for the purpose of overseeing the liquidation or dissolution of an entity." Id. at 645-646 (IV). Yet earlier in the same opinion, the federal court cited a Virginia Supreme Court case — *Adelman Assoc. v. Goldsten*, 209 Va. 731, 738 (167 SE2d 104) (1969) — which stands for the proposition that "a court of equity is not empowered to appoint a receiver for a corporation, 'absent proof of insolvency, fraud, waste, or improper

[6] The Virginia Supreme Court considers Fourth Circuit and lower district court decisions as persuasive authority but not binding precedent for Virginia courts. *Toghill v. Commonwealth*, 289 Va. 220, 227 (768 SE2d 674) (2015)

12

conduct.'" *C. F. Trust*, 140 FS2d at 645 (IV). *Adelman* thus shows that insolvency is not the only basis for appointment of a receiver allowed in Virginia courts. In the cases before us, Tesoro alleged that JAAAT engaged in improper conduct, which could provide the basis for obtaining a receiver, when it alleged that JAAAT made false certifications to the federal government, commingled project funds, and "engaged in a scheme of tortious conduct and contractual violations to misappropriate funds entrusted to them by the U. S. Government to pay Tesoro." And Tesoro cites no controlling authority for the proposition that improper conduct, standing alone, is an insufficient justification for a receiver under Virginia law. Finally, *Adelman* is a case involving a corporate insolvency; thus it only stands for the proposition that a receiver *is* available in such a case, not that a receiver is not available in other types of cases. Thus *Adelman* is consistent with Virginia statutes that grant a court in a judicial proceeding brought to dissolve a corporation the power to appoint receivers:

> Unless an election to purchase has been filed under § 13.1-749.1, a court in a judicial proceeding brought to dissolve a corporation may appoint one or more receivers to wind up and liquidate, or one or more custodians to manage while the proceeding is pending, the business and affairs of the corporation.

Va. St. § 13.1-748 (A); see also Va. St. § 13.1-910. It follows that Tesoro has not shown that Virginia case law prohibits the appointment of a receiver in non-insolvency proceedings. Cf. *Bethlehem Steel Corp. v. Williams Indus.*, 245 Va. 38, 43 (425 SE2d 484) (1993) (appointment of a receiver not appropriate where debtor was not insolvent *and* there was no evidence of fraud, waste, or any other improper conduct).

Moreover, at least two provisions of the Virginia Code allow for receivers and could arguably benefit Tesoro in Virginia. First, Va. St. § 8.01-549, entitled "Restraining order or receiver," provides that courts may appoint receivers in connection with attachments[7] as follows:

> The court may interpose by a restraining order, or the appointment of a receiver, or otherwise, to secure the forthcoming of the specific property sued for, and so much other estate as will probably be required to satisfy any further order that may be made in the proceedings.

---

[7] See Va. St. § 8.01-533 ("If any person has a claim, legal or equitable, to (i) any specific personal property, (ii) any debt, including rent, whether the debt is due and payable or not, (iii) damages for breach of any contract, express or implied, or (iv) damages for a wrong, or for a judgment for which no supersedeas or other appeal bond has been posted, he may sue out an attachment therefor on any one or more of the grounds stated in § 8.01-534.").

This Code section appears to provide for the specific type of receiver that Tesoro sought, i.e., one "to manage the assets and funds associated with the . . . project during the pendency of the litigation." Second, Va. St. § 8.01-591, the first code section in an article entitled "Special Receivers," provides for the appointment of receivers as follows:

> Whenever the pleadings in any suit make out a proper case for the appointment of a receiver and application is made therefor to any court, such court shall designate the time and place for hearing such application, and shall require reasonable notice thereof to be given to the defendant and to all other parties having a substantial interest, either as owners of or lienors of record and lienors known to the plaintiff, in the subject matter. The court to whom such application is made shall inquire particularly of the applicant as to the parties so substantially interested in the subject matter, and such applicant, for any intentional or wilful failure to disclose fully all material information relating to such inquiry, may be adjudged in contempt of court.

See also Costello, Virginia Remedies, § 9.02 (Special Receivers) ("[S]pecial receivers often play a large role in assuring remedies to entitled persons. On a petition of a party in any case where the pleadings make out a proper case for the appointment of a receiver, *i.e.*, it is inappropriate for one party to remain in control of the property pending trial, the court shall designate the time and place for a hearing on the

15

petition."). Tesoro has not mentioned these Virginia Code sections in its appellate briefs and has therefore failed to explain why they are not applicable.

In short, Tesoro has failed to carry its burden to show that Virginia law is materially different from, much less in conflict with, that of Georgia on the legal points raised by Tesoro's complaint. Tesoro, therefore, has wholly failed to make a strong case, free from substantial doubt, that enforcement of the parties' forum selection clauses that Tesoro drafted are likely to produce a result that violates a public policy of Georgia because the same or similar remedies are not available in Virginia. See *Nationwide Gen. Ins. Co. v. Parnham*, 182 Ga. App. 823, 825 (4) (357 SE2d 139) (1987) ("mere dissimilarity of law is not sufficient for application of the public policy doctrine") (citation and punctuation omitted). Accordingly, the trial courts did not err in granting JAAAT's motions to dismiss in each of the cases presented on appeal.

2. JAAAT's motion to dismiss a portion of Tesoro's appeal in Case No. A16A0609 is dismissed as moot.

*Judgments affirmed. Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*

16