# Wytheville.

## CITY OF PETERSBURG v. PETERSBURG AQUEDUCT COMPANY.

### JUNE 16, 1904.

1. POLICE POWER—*Alienation by State or Municipality.*—The police power of a State is a governmental function, the exercise of which neither the Legislature, nor any subordinate agency thereof, upon which part of its authority may have been conferred, can alienate or surrender by grant, contract or other delegation.

2. CONSTITUTIONAL LAW—*Charter to Private Corporations—Supervision—Police Power—City Streets.*—A general power contained in a charter authorizing an aqueduct company to open ground in the streets of a city or town for the purpose of laying and repairing its water pipes is subordinate to the power and control that the city or town then has, or that may be thereafter conferred upon it, over its streets. The power granted to the company is subject to legislative control as to the manner of its exercise. Such control is simply an exercise by the State of its police power, and does not impair any contract obligation with the company.

3. PRIVATE CORPORATIONS—*Charter Powers—Failure to Exercise—Power of City Over Streets—Case in Judgment.*—A company chartered over three-quarters of a century ago for the purpose of supplying water to a sparsely settled town of a few thousand inhabitants, with the privilege of opening streets and highways, and which has only exercised its privilege to a very limited degree—furnishing drinking water to only a small part of the town—cannot (after the town has grown to be a city, and expended a large sum of money in furnishing the entire city with a complete water system for all purposes) under its general grant of power, dig up or obstruct the streets of the city, against its will, for the purpose of enlarging or extending its system. In the case in judgment, the further fact that the company is practically insolvent and without means, either as regards capital or water supply, of prop-

erly enlarging its system justifies the conclusion that its undertaking is an abuse rather than a legitimate exercise of charter rights.

Appeal from a decree of the Circuit Court of the city of Petersburg in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Geo. Mason* and *Wm. B. McIlwaine,* for the appellant.

*Davis & Davis,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

The object of this suit is to enjoin appellees from digging up or otherwise obstructing the streets of the city of Petersburg, for the purpose of laying water mains therein, without the consent of the City Council. At the hearing, the trial court dismissed the bill on demurrer, and from that decree the city appeals.

The bill presents the following case:  By an act of the General Assembly, passed February 22, 1822, the Aqueduct Company was chartered for the purpose of conducting a full and sufficient supply of water from springs within the corporate limits of the town of Petersburg, or within a mile of the same, or from the falls of the river, or the basin of the canal, to and along the streets of the town; provided the streets or highways were not to be opened in such manner as to prevent the passing of teams or carriages therein with convenience; and that, after opening the ground in the streets or highways, the company should put the same in good repair under penalty of being prosecuted for a nuisance. At that time the population of the town numbered only a few thousand, and the inhabited part of it was

mostly confined to the lower district of the present city, along the tide-water level of Appomattox river. Soon after its incorporation the company acquired certain springs in the town and in the county of Chesterfield, and conveyed the waters therefrom through very small pipes, supplying some little water for domestic purposes, mainly for drinking purposes, to the inhabitants of the district referred to along the lower levels near the river. Many years ago the company installed a few fire hydrants, but they have long since been abandoned, doubtless on account of the insufficiency of the water supply. The small spring in the city, from which the company in part drew its supply, has become so contaminated as to require its absolute abandonment, so that the company's entire available source of supply is from the springs in Chesterfield county. The water from those springs is collected in two reservoirs, only a few feet square, from which it flows through a four-inch main under Appomattox river into the lower section of the city.

These conditions continued from the date of the charter until within a short time before the institution of this suit. In the meanwhile, as the town increased in size and population, the company became wholly unable to meet the growing demand, and to supply the community with sufficient water for drinking purposes alone, and made no attempt to do so. Nearly the whole city was devoid of any water supply, except from private wells, and no provision was made for protection against fire.

In this situation of affairs, in the year 1857, the city was compelled to establish, and by virtue of authority of its charter did establish, at a cost of a half a million of dollars, a thorough and adequate water system, furnishing the community with an abundant supply of clear, pure and wholesome water. The distribution of pipes and conduits conducts water through all parts of the city, and the pressure from high-service reservoirs and pumps forces the water to the highest elevations within the corporate limits, furnishing it in ample quantities for hygienic and

protective purposes, and enabling the city to maintain an efficient fire department. Even in the lower parts of the city, traversed by the company's pipes, many citizens are obliged to take city water on account of the otherwise inadequate supply.

The bill further charges that if the company ever had a right to lay its pipes and conduct its water into any other parts of the city than those already occupied, which is denied, the presumption has long since arisen that it has surrendered such right, which surrender has been accepted by the Commonwealth. In addition to that it is alleged that the company is debarred by reason of vested riparian rights, from taking water from the falls of the river or the basin of the canal, and is therefore limited by that fact, as well as by election to the springs in Chesterfield county, as a source of supply, which, as remarked, is wholly insufficient to furnish even its present system. It is also insisted that the company is financially embarrassed, having recently permitted a note for $5,000 to go to protest; and that only $10,000 of its maximum capital of $15,000, has been subscribed; that it is without artificial or mechanical means of forcing its meager water supply to higher levels than those which it at present occupies.

Petersburg was chartered as a town in May, 1784, and empowered to keep in order the streets and lands within its limits; and its Hustings Court was authorized to appoint surveyors of streets, but no general police power over its streets was expressly granted to the town authorities. In the year 1850 appellant was chartered as a city; and a new charter was granted it in March, 1875, which from time to time has been since amended as the exigencies of the community required. At the revisal of the statutes of the State, in 1849, the Legislature adopted the general policy as to towns, which has since been applied to cities, that "no company shall cross or occupy with its works the streets or alleys, public or private, in any city or town, without the assent of the corporate authorities thereof,

unless such assent be dispensed with by special provision of law."
V. C., sec. 1093; and that policy has been vigorously upheld in
the charters of the city.

It is charged that, in utter disregard of these salutatory provis-
ions of law governing such matters, and of the charter rights of
the city, without any warrant of authority from it, and in dero-
gation of its rights, and in defiance of its municipal agencies,
the company had been for several days, and was still, engaged
in digging up the streets and pavements of the city, and laying
eight-inch pipes therein, where it had never had water pipes
before, and at an elevation considerably higher than the source
of its water supply; and had also deposited piles of its pipes
on the roadway of the streets, thereby obstructing them and
making them dangerous to travellers; that the city had recently
had constructed, at a very large outlay of corporate funds, pave-
ments of vitrified brick upon concrete foundations and sheet
asphalt, and before doing so, in order to prevent injury thereto
by disturbing or breaking through the surface, had caused all
underground structures, such as sewers, gas pipes, water pipes,
etc., to be put in thoroughly good condition, and had all proper
and necessary connections laid from the main pipe to the inner
side of the curb line of said streets for the use of abutting owners,
whether then desired for use or not, so as to be tapped when
needed in future, without going beyond the curb line of the
sidewalk; that if the company has the right to dig up the un-
paved streets of the city to lay or repair its pipes, it has equal
right to dig up such pavements for the same purpose, the result
of which would be to destroy the pavements and involve the
city in heavy loss.

Assuming, as the court must assume upon the demurrer to
the bill, that all relevant and properly pleaded facts are true, the
decree of the Circuit Court sustaining the demurer and dis-
missing the bill is plainly erroneous.

In its last analysis, the contention of the company amounts

to this:   That a general power contained in a charter authorizing an aqueduct company to open ground in the streets of a city or town for the purpose of laying and repairing its water pipes, places the company, with respect to the manner of exercising those rights, beyond legislative control.

To that proposition this court cannot give its assent.   Bearing in mind the distinction between public and private corporations in the matter of public control—that the former are regarded as instrumentalities of the State and liable to visitation and regulation, while the charters of the latter are contracts within the meaning of the contract clauses of the State and Federal Constitutions, the obligation of which, in the sense of these clauses, cannot be impaired (*N. O. Water Co.* v. *Rivers,* 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943), nevertheless, the police power of a State is a governmental function, the exercise of which neither the Legislature nor any subordinate agency thereof, upon which part of its authority may have been conferred, can alienate or surrender by grant, contract or other delegation.   *Richmond, &c. Co.* v. *Richmond,* 26 Gratt. 83, S. C. 96 U. S. 521, 24 L. Ed. 743; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Stone* v. *Mississippi,* 101 U. S. 814, 25 L. Ed. 1079; *Butchers' Union Slaughter-House, &c. Co.* v. *Crescent City Live-Stock Landing, &c. Co.,* 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; *Powell* v. *Penna.,* 127 U. S. 678, 8 Sup. Ct. 992, 32 L. Ed. 253.

The prohibition of state laws impairing the obligation of contracts has never been construed as depriving the State of the power of protecting the public health, morals or safety of its citizens as one or the other may be affected in the execution of such contract.   So that, while the State cannot deprive a company of the lawful exercise of its functions under its charter, it

may unquestionably, in the interest of public welfare, regulate the use and prevent the abuse of charter powers.

It follows as a necessary consequence from the foregoing statement of the law, that there is an implied reservation of the police power of the State in every charter granted by the Legislature. There is no conflict, therefore, between the provision of the charter in this case authorizing the company to open ground in the streets and highways of the city for the purpose of laying or repairing its pipes and the general statute found in section 1093 of the Code and the provisions of section 6, clause VIII., of the charter of the city, that "no company shall occupy with its works, the streets of the city without the consent of the Council," and clause IX. of the same section, that the city shall have power "to prevent the cumbering of streets . . . in any manner whatsover." Acts 1874-'5, p. 147. It would be a mischievous precedent for this court to hold that a company chartered over three-quarters of a century ago for the purpose of supplying water to a sparsely settled town of a few thousand inhabitants, with the privilege of opening streets and highways for that purpose, (a privilege which during all these years it had never essayed to exercise beyond its original sphere of operations) should now be permitted, after the town had grown to be a city, under a general grant of power, to attempt to extend its system beyond former limits and, in so doing, to obstruct and dig up the streets of the city in violation of general and special statutes of the State. Even if the charter was susceptible of such interpretation, the alleged facts, that the company is practically insolvent and without adequate means, either as regards capital or water supply, of properly enlarging its present system, would justify the conclusion that its undertaking is an abuse rather than a legitimate exercise of charter rights.

The case of *Wheat* v. *Alexandria,* 88 Va. 742, 14 S. E. 672, is relied on as controlling authority for the contention of appellee, but the facts of the two cases are essentially different. In

the former case the court was dealing with the reasonableness of, and right to enforce, a penal ordinance of the city of Alexandria, while this case involves the police power of the State.

The bill sets out a condition of facts, which, if proved, would clearly entitle the city to the injunctive relief prayed for. The decree complained of is, therefore, erroneous, and must be reversed.

*Reversed.*