# Richmond

## Hugh H. Hanshaw, Et Al. v. Charles D. Day.

June 12, 1961.

Record No. 5239.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*Sidney Sacks (Michael V. De Laura,* on brief), for the appellants.

*Reid M. Spencer (James, Wahab & Spencer,* on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

Charles D. Day, complainant, filed a bill of complaint against Hugh H. Hanshaw, A. C. Mays, Ira C. Erwin, W. E. Allmond, C. H. Paul and F. E. Hudgins, defendants, as officers and directors of a dissolved corporation known as East Ocean View-Little Creek Volunteer Fire Department, Incorporated, seeking to restrain a proposed distribution of the assets of the dissolved corporation, and praying for the appointment of a receiver to take possession of the assets and distribute them under order of the court. After the defendants filed a demurrer to the bill, the complainant, with leave of court filed a supplemental bill, and the demurrer thereafter was overruled. Defendants then filed their answer to the bill, as supplemented, and the cause was heard ore tenus by the court. A decree was entered appointing a receiver for the dissolved corporation and directing distribution of the assets in a manner different from what had been proposed by the members. Defendants sought, and were granted, an appeal.

The material facts in the case are not in dispute.

The East Ocean View-Little Creek Volunteer Fire Department Incorporated, (hereinafter referred to as the corporation) was issued a charter by the State Corporation Commission on April 18, 1952, constituting the organizers as a non-stock, non-profit body politic and body corporate for charitable or benevolent or literary purposes. Its operation was subsidized in large part from appropriations from public funds amounting to a total of $15,800.00 during the lifetime

of the corporation. Additional funds were raised by community fund raising events and by contributions from individuals, clubs and civic organizations. The members of the corporation paid annual dues in the amount of three dollars each.

The corporation owned no real property, but operated on property owned by the East Ocean View Chamber of Commerce, Inc., leased to the corporation for an annual rental of one dollar.

The corporation operated as a volunteer fire department until January 1, 1959, when the area it served was incorporated into the city of Norfolk as a result of annexation proceedings, thereby terminating the necessity for its continued operation. Immediately prior to the effective date of the annexation the corporation had disposed of its physical assets, partly by gift to another volunteer fire department and partly by sale. At the time of the filing of the bill of complaint the total assets of the corporation consisted of cash in bank in the amount of $12,184.82.

On July 8, 1959, the charter of the corporation was revoked by order of the State Corporation Commission, under the authority of Section 13.1-290, Code of Virginia, 1950, as amended, because of the failure of the corporation to file a certificate setting forth the name of the registered agent of the corporation.

On September 8, 1959, a meeting of the membership of the corporation was held, the membership then totalling 29, at which time the following resolution was adopted:

"Motion by C. Paul that as soon as the books of this organization have been audited that the treasurer issue a check for each member in good standing as of 12/31/58 on a prorated basis based on length of service in this organization; these checks to be issued at the next meeting to each member, and that the members be instructed to donate his share to the charity of his choice. This will insure each member that his share will go to the charity of his choice. And three members be appointed by the president to work up the amount due each member and present same to Mr. Allmond within the next ten days. Seconded by Fleming. Carried."

Complainant had participated in the formation of the corporation, had been a member for several years and had served as president for three years. At the time he filed the suit, he was no longer a member of the corporation but had his residence and office and owned real estate in the East Ocean View area of the city of Norfolk. In his testimony he gave as his reason for filing the suit and seeking the

court's guidance in the distribution of the assets the fact that the assets had been raised by tax funds and voluntary contributions.

The original bill contained no allegations concerning complainant's position with relation to the controversy. The supplemental bill alleged that complainant was a citizen of the city of Norfolk and that he was the fee simple owner of real estate located in the area of the city known as East Ocean View. Defendants' demurrer attacked complainant's right to file the bill on the ground that the bill did not show that complainant had an interest in the subject matter of the suit.

The decree complained of directed the distribution of the assets of the corporation as follows:

Eighty percent to the East Ocean View Youth Recreation Association, Inc., to be used in furtherance of its corporate purposes;

Ten percent to the Board of Deacons of the East Ocean View Presbyterian Church, to be used in furtherance of the scout programs of said church; and

Ten percent to the Trustees of East Ocean View Chamber of Commerce, Inc., to be used for the repair and maintenance of existing improvements on the real estate of said corporation.

Defendants have assigned two errors to the actions of the chancellor:

(1) That he erred in overruling the demurrer filed by defendants.

(2) That he erred in holding that § 13.1-257 (e), Code of Virginia, 1950, as amended, was constitutional.

■ Between the time the corporation was chartered and the time it was dissolved in 1959, the General Assembly of Virginia made sweeping revisions in the laws applying to corporations. A determination of the questions raised by this appeal requires a consideration of the laws applicable at the time the corporation was chartered, and also of the revisions subsequently made and their effect on the charter of the corporation involved in this case.

At the time the corporation was chartered § 13-220 to § 13-237, both inclusive, Code of Virginia, 1950, as amended, relating to non-stock corporations, were in effect. Under Code, § 13-237, a suit to distribute the assets of a dissolved non-stock corporation could only be brought by a creditor or by one-fifth in number of the active members of the corporation. This section further provided that in the distribution of such assets the court should, after the liquidation of taxes and debts, direct payment of the surplus, if any, to any

organization, person or persons who might be equitably entitled thereto and if there were none such, into the Literary Fund of the State.

By Acts of Assembly, 1956, c.428, Code, § 13-220 to § 13-237, both inclusive, were repealed and Code, § 13.1-201 to § 13.1-300, relating to non-stock corporations, were enacted.

Code § 13.1-203 of the new Act provides as follows:

"The provisions of this Act relating to domestic corporations shall be applied to:

"(a) All corporations organized hereunder; and

"(b) All corporations existing at the time this Act becomes effective subject, however, to the provisions of § 13.1-290."

Code § 13.1-290 provides, in part, that the provisions of the Act shall be applied to all corporations existing at the time of the effective date of the Act (January 1, 1957), and their members, and shall be a part of the charter of every corporation theretofore or thereafter organized.

Code § 13.1-257 (e), of the new Act, grants to courts of equity the power to liquidate the assets and affairs of a non-stock corporation, after dissolution, "upon the application of any person, for good cause."

Code § 13.1-258, of the new Act, sets forth the procedure to be followed by the court in distributing the assets of a dissolved non-stock corporation. It provides for the appointment of a receiver to aid the court in the collection and distribution of the assets. Sub-section (a) requires the payment of court costs and corporate debts. Sub-section (b) provides that the assets held by the corporation, upon condition requiring return upon dissolution, shall be returned. Sub-section (c) provides that assets received and held subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational or similar purposes shall be transferred or conveyed to corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation as the court may direct. Sub-section (d) provides that other assets, if any, shall be distributed in accordance with the provisions of the articles of incorporation or the by-laws, to the extent that such articles or by-laws determine the distributive rights of members, or any class or classes of members, or provide for distribution to others. (It should be noted that defendants do not contend that either the charter or the by-laws of the corporation make any provision for

a distribution of the assets of the corporation to the members.) Subsection (e) provides for the distribution of any remaining assets in a manner the court may direct.

Thus it will be seen that the effect of the above revisions was to make the new regulations applicable to and a part of the charter of all non-stock corporations, whether organized before or organized after the effective date of the Act; to change the designation of the persons who might bring a suit for the liquidation of the assets and affairs of a non-stock corporation, and to provide a different manner for the distribution of the assets of a dissolved non-stock corporation.

While it must be conceded that a corporate charter is a contract between the state on the one hand and the organizers of the corporation on the other, and therefore cannot be impaired by subsequent legislation, this principle is subject to the well-recognized limitation that the legislature does not thereby relinquish its authority, under its police power, to supervise, regulate and limit the exercise of corporate functions by appropriate legislative changes. *R. F. & P. R. Co.* v. *City of Richmond*, 26 Gratt. (67 Va.) 83, 95; *Virginia Development Co., et al.* v. *Crozer Iron Co.*, 90 Va. 126, 132, 133, 17 S. E. 806, 808; *Petersburg* v. *Petersburg Aqueduct Co.*, 102 Va. 654, 660, 47 S. E. 848, 849; 4 Mich.Jur., Corporations, § 225, pp. 770, 771; 13 Am.Jur., Corporations, § 78, pp. 222, 223, § 1148, pp. 1068, 1069, § 1150, p. 1070.

This Court said in the case of *Virginia Development Co., et al.* v. *Crozer Iron Co., supra*, quoting, with approval, Cooley, *Const. Lim.* (6 Ed.) 709, "The rights insured to private corporations by their charters, and the manner of their exercise are subject to such new regulations as from time to time may be made by the State with a view to the public protection, health, and safety, and in order to guard properly the rights of other individuals and corporations." (90 Va., at pp. 132, 133).

As applied to a controversy such as the one now before us, the legislature clearly acts for the public good, in the proper exercise of its police power, when it provides that corporate assets which find their origin in public tax funds and voluntary civic contributions shall, when the corporation is dissolved, be distributed so as to insure their continued use for public and civic purposes. In so acting, the legislature may properly provide that its regulations shall be as binding upon corporate charters previously granted as upon those to be granted in the future.

As has been said, Code, § 13.1-257 (e) permits the filing of a suit to secure judicial distribution of the assets of dissolved non-stock corporations by any person *for good cause* [emphasis added]. In this case, the complainant resided in the East Ocean View area of the city of Norfolk; he owned property and paid taxes to the city; he had knowledge that assets, raised from public sources, held by a dissolved non-stock corporation, might be distributed in a manner contrary to law. He clearly had good cause and was a proper person to file a suit to seek the intervention of the court to secure proper distribution of such assets. Defendants' demurrer was, therefore, properly over-ruled.

Defendants contend that Code, § 13.1-257 (e) is unconstitutional because it permits the taking of property without due process of law. This contention is without merit.

The corporation was organized for charitable or benevolent or literary purposes. Contributions made to it and the assets realized therefrom were dedicated to those purposes and stamped with a public interest by the charter, the laws of this State, sound reason and public policy. The members acquired no property rights in, nor were they equitably entitled to such assets, either during the lifetime of the corporation or upon dissolution. To hold otherwise would convert the public nature and purpose of the corporation into a vehicle for the personal pecuniary gain of the members.

The action of the legislature in permitting the filing of a suit, under the circumstances of this case, by one who does not himself claim a property interest in the assets, is procedural only, and does not constitute the taking of property without due process of law.

The chancellor found that there was no volunteer fire department in the area to which the assets of the dissolved corporation should be distributed. He therefore directed their distribution to organizations which he found, after hearing extensive testimony, to be engaged in activities substantially similar to those of the dissolved corporation, in accordance with the provisions of Code, § 13.1-258 (c). We concur in the distribution he has made.

Since the corporation was organized for charitable, benevolent or literary purposes, the chancellor properly distributed the assets to organizations engaged in charitable, benevolent or literary activities. In addition, it should be noted that counsel for defendants, at the bar of the Court, conceded that if the chancellor had the power to make

a distribution of the assets, then the organizations to which the distribution was made were proper ones.

We find no error in the decree appealed from and it is, therefore,

*Affirmed.*