PRESENT:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

COMMONWEALTH OF VIRGINIA, EX REL.
THE HONORABLE RANDOLPH A. BEALES,
ATTORNEY GENERAL, ET AL.                    OPINION BY
                                 SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 011794                    January 11, 2002

THE JOCO FOUNDATION, ET AL.


                FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                     James W. Updike, Jr., Judge

     The question presented in this appeal is whether the

circuit court has subject matter jurisdiction over this suit

instituted by the Attorney General of Virginia, in the name of

the Commonwealth.  The suit involves a Virginia corporation duly

established by the State Corporation Commission under the

Virginia Nonstock Corporation Act, Code §§ 13.1-801 through -944

(the Act).  The crux of the question is whether the State

Corporation Commission is the proper forum for decision of the

matters raised in the suit, or whether the Attorney General may

proceed in the circuit court under some "inherent power" of the

circuit court or under the common law to obtain the relief

requested.

     This proceeding is one of a series of lawsuits stemming

from the 1996 death of Reid Jones, Jr., a philanthropist of

Moneta, Virginia.

In January 2001, the Attorney General filed this suit in a pleading labeled "Bill of Complaint for Reformation and Removal of Directors." Among the defendants are The JOCO Foundation, Dianne E. H. Wilcox, Judy Jarrells, William John Killinger, SunTrust Bank, SunTrust Securities, Inc., and the Phoenix Foundation, Inc.

In the bill, the Attorney General asserts that he sues "in his official capacity . . . as legal representative of the charitable beneficiaries of the JOCO Foundation, Inc., a charitable foundation established under the will of Reid Jones." He asserts that "under the common law and by statute," he "is the legal representative of the beneficiaries of all charitable trusts and charitable assets in the Commonwealth." According to the pleading, the "Attorney General possesses the common law authority to act on behalf of the public in matters involving charitable assets."

Further, the Attorney General asserts that The JOCO Foundation "is a Virginia corporation organized under § 501(c)(3) of the Internal Revenue Code to benefit community organizations and created under" the Jones will. He alleges that defendants Wilcox, Killinger, and Jarrells are JOCO's corporate directors, residing in Bedford County.

The bill of complaint states that the SunTrust defendants are named parties "because they currently hold the assets" of

2

JOCO. The Attorney General alleges that, "on behalf of the intended beneficiaries" of JOCO, "he asserts this claim to the assets of the Foundation held by SunTrust to ensure that those assets are distributed as Reid Jones, Jr., intended when he created JOCO Foundation."

Additionally, the Attorney General alleges that "The Phoenix Foundation Inc., is a non-stock corporation created by Wilcox as a charitable foundation under her control and funded by money transferred from the JOCO Foundation. [Defendants] Wilcox, Killinger and Jarrells are all directors of the Phoenix Foundation, Inc. The Phoenix Foundation is an offshoot or 'alter ego' of the JOCO Foundation."

Also, the Attorney General asserts that he is "informed and believe[s]" that the individual defendants "have breached their fiduciary duties owed to the JOCO Foundation by acts of self-dealing, by engaging in actions which create conflicts of interest, by accepting and/or paying excessive fees for services rendered, and by taking actions and using assets of the JOCO Foundation for non-charitable purposes and/or purposes that conflict with the stated intentions of the testator, Reid Jones, Jr., all to the detriment of the intended beneficiaries of the JOCO Foundation."

Additionally, the Attorney General alleges that "the actions and/or inaction" of the individual defendants "have

3

caused the assets of the JOCO Foundation to be jeopardized and threaten to frustrate the stated intent" of Jones.

The Attorney General further alleges that the "original Articles of Incorporation of the JOCO Foundation reflect . . . Jones' express intention to use Foundation proceeds to benefit existing charities in the United States and particularly charities in the Roanoke, Virginia community."  Instead, according to the allegations, the individual defendants have removed JOCO's assets from the United States to the Dominican Republic, either directly or by channeling the assets through the Phoenix Foundation, Inc.

Also, the Attorney General alleges that the individual defendants have authorized unnecessary or excessive expenditures of JOCO assets both in the United States and in the Dominican Republic, and that they will continue to remove assets "to be used, among other things for construction of a school in the Dominican Republic."

Continuing, the Attorney General lists certain conduct of the individual defendants under the heading "Breaches of Fiduciary Duties and Acts of Self Dealing."  Included in the list are:  Appointing JOCO directors "who are closely related to or are indebted to Wilcox or subject to her control;" employing Killinger and his company to perform construction work for JOCO, and using JOCO assets to pay Killinger fees and costs in excess

4

of the market rate for services or materials provided; "hiring family members or friends to perform unnecessary services" for JOCO, and paying those persons with JOCO funds; creating in 1999 the Phoenix Foundation for the purpose of using JOCO assets "to travel to and spend time at a resort in the Dominican Republic and to build a school" there, thus contravening Jones' intent in establishing JOCO to benefit existing charities in the United States and in the Roanoke area; and, amending the JOCO articles of incorporation "to delete the geographic limitation . . . and give the Board of Directors nearly unlimited discretion in distributing the funds of the JOCO Foundation."

In the prayer for relief, the Attorney General specifically seeks:  Removal of the individual defendants as JOCO directors and replacement with "new, independent directors;" rescission or reformation of the JOCO articles of incorporation; appointment of a receiver to conduct audits of JOCO's and Phoenix's financial records; an injunction against SunTrust from releasing or distributing corporate funds; an injunction against the individual defendants prohibiting distribution of Phoenix funds; and, an order requiring Phoenix "to return all funds transferred to it or 'donated' to it by the JOCO Foundation."

In the prayer, the Attorney General also asks the court to "order such terms and conditions as it deems appropriate to

5

protect the public's interest in the charitable assets of the JOCO Foundation."

In "Answer[s] and Grounds of Defense," the individual defendants, JOCO, and Phoenix generally deny "that the relief requested in the Complaint is justified under the facts of this case."

In an answer, the SunTrust defendants admit holding "the assets of The JOCO Foundation, Inc.," and state that the court's permission to interplead the assets has been sought in a separate proceeding. SunTrust asks that it be dismissed from this suit and that the court grant its request for interpleader, "which will satisfy the Plaintiffs' goal of preventing SunTrust from releasing or distributing the funds of The JOCO Foundation (except as authorized by further decree or order of this Court)."

The Attorney General then filed a motion "for entry of a preliminary injunction to be entered against defendants Wilcox, Jarrells and Killinger enjoining them from taking any action with respect to the funds and assets of The JOCO Foundation, Inc., or the Phoenix Foundation, Inc., until the claims in this case are resolved, and for a further Order appointing a Special Receiver to manage and operate The JOCO Foundation, Inc. and the Phoenix Foundation, Inc., while this litigation is pending." With a memorandum supporting the motion, the Attorney General

6

filed 14 pages of exhibits.  In response, defendant Wilcox filed an extensive memorandum, with 33 exhibits.

During an April 2001 hearing on the motion, at which no evidence was heard, the trial court considered argument of counsel.  The Attorney General represented to the court:  "Our main objective in this instant action is to preserve the charitable assets until there has been a review of the financial position of the foundation. . . ."  He argued that the trial court has "inherent authority" to appoint a receiver under these circumstances, and that "the common law" relating to the fiduciary duties of corporate directors applies to enable the court to grant the motion.

During the hearing, the trial court inquired about "the authority of the Court to grant the relief requested."  Addressing that inquiry, Wilcox argued:  "Corporations are a creature of statute.  JOCO and Phoenix are both non-stock corporations governed by the Virginia Non-stock Corporation Act and not by common law.  All of the authority cited by petitioners are trust cases, have no applicability whatsoever."  She contended that the Attorney General must seek relief through statutes dealing with corporations.

Upon consideration of the bill of complaint, the memoranda of the parties, and counsel's argument, the trial court ruled in a May 2001 order "that it lacks subject matter jurisdiction over

7

the Commonwealth's claims seeking appointment of a receiver and a preliminary injunction" against corporate directors "because the Commonwealth's exclusive remedy to address alleged breaches of fiduciary duties owed by these . . . directors" is set forth in Title 13.1 of the Code of Virginia, "which gives exclusive jurisdiction to the State Corporation Commission." Subsequently, the trial court denied the Attorney General's motion for reconsideration and denied his request for a temporary injunction pending appeal.

In September 2001, we awarded the Attorney General this appeal from the May 2001 order, having previously ruled that the order "disposes of the matter and, consequently, is a final order subject to appeal under Code § 8.01-670."

Upon appeal, we shall consider only the procedural circumstances of the suit, about which there is no dispute; we shall not consider the myriad facts disclosed by the parties' memoranda. From the standpoint of the individual defendants, however, it must be noted that they deny all the Attorney General's factual allegations of breach of fiduciary duties. Those defendants contend they performed properly in an effort to fulfill Jones' wish "of building an elementary school for impoverished residents of one of the poorest neighborhoods in the Dominican Republic." Wilcox asserted that this controversy is generated by Jones' "disgruntled heirs."

In his assignments of error, the Attorney General contends the trial court erred when it denied his motion for an injunction and appointment of a receiver on the ground that the court "lacks subject matter jurisdiction over claims for an accounting, removal of directors and other equitable relief asserted by the Commonwealth against directors of a charitable foundation . . . based upon allegations that the directors engaged in self-dealing, wasted foundation assets and breached fiduciary duties owed to the foundation."

On brief, the Attorney General argues that the circuit court sitting in equity possesses subject matter jurisdiction "over the Commonwealth's suit for an accounting and equitable relief against directors of a charitable foundation organized as a Virginia non-stock corporation." Citing general statutory authority, he says that Virginia circuit courts have broad equity power over individuals and corporations, including the power to grant injunctions. He argues the jurisdiction of the State Corporation Commission is limited to the administration and enforcement of laws dealing with corporations.

According to the Attorney General, "In numerous cases decided by this Court, circuit courts have exercised subject matter jurisdiction over claims challenging the conduct of individual corporate directors."

Taking an alternative position, the Attorney General argues that the circuit court "has the power to grant some if not all of the relief requested by the Commonwealth."  He acknowledges it is generally held that the power of courts in reviewing the internal management or policies of corporations is limited in scope, citing Gottlieb v. Economy Stores, Inc., 199 Va. 848, 857, 102 S.E.2d 345, 352 (1958).

He also acknowledges that generally only members or shareholders of a corporation have standing to challenge internal management decisions of a corporation.  However, he argues, this rule does not apply "where the Corporation is also a charitable foundation."  The Attorney General principally relies upon Tauber v. Commonwealth, 255 Va. 445, 499 S.E.2d 839 (1998), as authority for the latter proposition.  He opines that "[i]nasmuch as JOCO is a charitable foundation, it is essentially a trust as well as a non-stock corporation," and that he has the common law authority to act on behalf of the public in such a case.

Summarizing, the Attorney General argues that the circuit court has the authority to consider claims brought by the Commonwealth against directors of a charitable foundation, organized as a nonstock corporation, alleging the directors have breached fiduciary duties, engaged in acts of self dealing, and wasted foundation assets.  The court has the power, the argument

10

continues, to order an accounting to ensure the funds are being distributed in a way that satisfies the charitable purposes set forth in the original articles of incorporation. Also, the Attorney General contends, the circuit court "has inherent ancillary authority" to award injunctive relief and appoint a receiver.

Finally, the Attorney General argues that if "Dianne Wilcox and the other individual directors of JOCO breached their fiduciary duties when they amended the original Articles of Incorporation to delete the geographic restriction on charitable donations," the circuit court "may enter an order striking the amendment and restoring the original Articles of Incorporation."

We do not agree with the Attorney General. We hold that the trial court correctly ruled that it lacked subject matter jurisdiction over the matters raised in this suit.

Initially, applicable general principles should be reviewed. The phrase "subject matter jurisdiction" means the power of a court to adjudicate a specified class of cases. Subject matter jurisdiction is granted by constitution or statute, and cannot be waived. Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001). Whether a plaintiff has a common law remedy is a question of subject matter jurisdiction. Counts v. Stone Container Corp., 239 Va. 152, 153 n.1, 387 S.E.2d 481, 482 n.1 (1990).

11

A circuit court has "original and general jurisdiction of all cases in chancery" except for cases "assigned to some other tribunal." Code § 17.1-513. Every circuit court has jurisdiction to award injunctions. Code § 8.01-620.

Among the powers and duties of the State Corporation Commission (Commission) is the "duty of administering the laws made in pursuance of [the Constitution of Virginia] for the regulation and control of corporations doing business in this Commonwealth." Va. Const. art. IX, § 2. "No court within or without Virginia, except the Supreme Court by way of appeal as authorized by law, shall have jurisdiction to review, reverse, correct or annul any action of the Commission, within the scope of its authority, . . . or to enjoin, restrain or interfere with the Commission in the performance of its official duties." Code § 13.1-813, a part of the Act. "In the administration and enforcement of all laws within its jurisdiction, the Commission shall have the power . . . to issue temporary and permanent injunctions." Code § 12.1-13.

As we commence the analysis of the issue presented, certain basic, undisputed circumstances should be made clear. First, there has been no dissolution of either JOCO or Phoenix. According to this record, those domestic corporations, duly established by the Commission, are lawful, viable entities with

12

full power to operate within the authority granted by the Commission.

Second, the gist of the plaintiffs' claim is an attempt to inject the circuit court at the behest of the Attorney General into the operating machinery of established corporate entities. While the General Assembly, in Code § 55-532, has authorized the Attorney General to "exercise his common law and statutory authority" regarding certain nonprofit health care entities, and to become involved in the disposition of assets, no such specific power has been granted by the legislature regarding nonprofit corporations devoted to charitable purposes.

Third, and to state the obvious, this suit is brought by the Attorney General, and not by any director or other person or entity with statutory standing having the authority to tinker with corporate machinery.

And, fourth, the Attorney General's contention that the circuit court has subject matter jurisdiction in this matter advances the theory that a Virginia nonstock corporation devoted to charitable purposes "essentially" is a charitable trust. No direct authority is cited for this proposition and we have found none. See generally IVA Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 348.1, at p. 23 (4th ed. 1989) ("The truth is that it cannot be stated dogmatically that a charitable corporation either is or is not a trustee"); Edith L.

13

Fisch et al., Charities and Charitable Foundations § 134, at p.
132 (1974) ("Despite its fundamental importance no clear answer
or decisive criterion exists for resolution of the question
. . . whether any particular asset of a charitable corporation
or association is held absolutely or in trust").

We shall now turn to the Attorney General's prayer for
relief and will demonstrate that the General Assembly has
decided that the forum for each type of relief sought is in the
Commission, and not the circuit court.

Significantly, the bill is labeled "Bill of Complaint for
Reformation and Removal of Directors," and the plaintiffs pray
for an order granting reformation and removal.  Specifically,
the bill asks "that the current Articles of Incorporation of the
JOCO Foundation be rescinded and reformed. . . ," and "that the
court remove . . . Wilcox, Killinger and Jarrells as directors
of the JOCO Foundation and replace them with new, independent
directors."

The Act, in Code § 13.1-860, sets forth detailed procedures
for removal of directors, and the General Assembly has not
authorized the Attorney General to participate in that exercise
by prosecuting a suit in a circuit court.  Code § 13.1-861
permits any member or director, not the Attorney General, to
contest an election of directors in an appropriate circuit
court.  Code § 13.1-874 provides for removal of officers of

14

nonstock corporations, without any mention of the participation of the Attorney General.  Code §§ 13.1-884 through -893 control the amendment of articles of incorporation, including addition or deletion of provisions, under the supervision of the Commission, without any participation in such reformation in a circuit court at the relation of the Attorney General.

The prayer for relief also asks for appointment of a receiver to conduct an accounting and to manage JOCO and Phoenix until this suit is resolved, and for injunctive relief.  In Code § 13.1-909, the General Assembly has given circuit courts subject matter jurisdiction in the process of the dissolution of nonstock corporations, but only after termination of corporate existence.  A circuit court has "full power to liquidate the assets and business of the corporation at any time after the termination of corporate existence . . . upon the application of any person, for good cause, with regard to any assets or business that may remain."  § 13.1-909(B).  In a proceeding brought to dissolve such a corporation, a court "may issue injunctions, appoint a receiver or custodian pendente lite with such powers and duties as the court may direct, take other action required to preserve the corporate assets where located, and carry on the business of the corporation until a full hearing can be held."  § 13.1-909(E).  Of course, in this case there has been no termination of corporate existence, according

to the statutes providing for dissolution, to furnish the predicate for appointment of a receiver to conduct the corporate affairs.

The corporate existence of a nonstock corporation may be terminated involuntarily by order of the Commission "when it finds that the corporation (i) has continued to exceed or abuse the authority conferred upon it by law. . . ."  Code § 13.1-915.  Before entering such order, the Commission must issue a rule to show cause against the corporation.  The Commission may issue the rule on its own "or on motion of the Attorney General."  Id.  Of course, that has not happened here.

But, as we have said, the Attorney General maintains that a proper forum for the relief he seeks in the prayer of the bill is in the circuit court, principally relying on Tauber.  In that case, we said, "This Court long ago recognized the common law authority of the Attorney General to act on behalf of the public in matters involving charitable assets."  255 Va. at 451, 499 S.E.2d at 842.  There, we held that the Attorney General could properly assert jurisdiction in a circuit court over assets located in Virginia held by trustees in dissolution of a foreign charitable corporation.  The trustees had been directors of the corporation, which operated a hospital in the Commonwealth.

In that case, the charter of a Maryland charitable corporation had been revoked by that state, which converted its

16

directors by operation of law to trustees in dissolution.  Id. at 455, 499 S.E.2d at 844.  Because the charter revocation terminated the entity's corporate existence, it could no longer function as a corporation.  The corporate assets, located in Virginia, had automatically transferred to the directors as trustees.  Id., 499 S.E.2d at 845.  There, unlike this case, charitable assets were abroad in this State in the hands of individuals who were trustees in dissolution; those assets were not being held, as here, by a viable, lawful Virginia corporation.  Thus, we decided the Attorney General could act on behalf of the public regarding the Tauber assets.

Addressing another issue in Tauber, we rejected the defendants' contention that the litigation, dealing with appropriation of charitable assets by directors for their personal gain, involved impermissible interference by Virginia with the internal affairs of a foreign corporation.  Id. at 455-56, 499 S.E.2d at 845.  In that context, we said, quoting Hanshaw v. Day, 202 Va. 818, 824, 120 S.E.2d 460, 464 (1961), that contributions made to a charitable corporation and "the assets realized therefrom were dedicated to those purposes and stamped with a public interest by the charter, the laws of this State, sound reason and public policy."  255 Va. at 455, 499 S.E.2d at 845.  We also stated that "[t]he members acquired no property rights in, nor were they equitably entitled to such

17

assets, either during the lifetime of the corporation or upon dissolution." Id. "To hold otherwise," we said, "would convert the public nature and purpose of the corporation into a vehicle for the personal pecuniary gain of the members." Id.

Contrary to the Attorney General's argument, the fact that members of a charitable corporation have no personal property rights in corporate assets is not authority for permitting the Attorney General, in a circuit court suit like this, effectively to penetrate the corporate veil of an existing Virginia corporation, or as the Attorney General urges, "to disregard, to some extent, the corporate form."

As we have said, the Attorney General relies upon "numerous" other cases decided by this Court in which he points out "circuit courts have exercised subject matter jurisdiction over claims challenging the conduct of individual corporate directors." None of those cases is controlling here; we shall address only several.

In Feddeman & Co. v. Langan Assocs., 260 Va. 35, 41, 530 S.E.2d 668, 672 (2000), a corporation brought a damage suit in a circuit court against one of its competitors and against some of its former directors for, among other things, breach of fiduciary duties, a case wholly unlike the present case.

In Giannotti v. Hamway, 239 Va. 14, 28, 387 S.E.2d 725, 733 (1990), minority stockholders of a Virginia corporation sued in

18

a circuit court for liquidation of the corporation and appointment of a receiver, alleging breach of fiduciary duties by directors. That judicial proceeding, unlike the present suit, was specifically authorized by former Code §§ 13.1-94 and -95, predecessors to present Code § 13.1-748, a part of the Virginia Stock Corporation Act. 239 Va. at 17, 18, 387 S.E.2d at 726, 727. Adelman Assocs. v. Goldsten, 209 Va. 731, 737, 167 S.E.2d 104, 108 (1969), is a suit similar to Giannotti.

Finally, the Attorney General relies upon Stewart v. Lady, 251 Va. 106, 465 S.E.2d 782 (1996), for the proposition that the circuit court has subject matter jurisdiction over this claim challenging the conduct of directors. Actually, the case stands for the opposite proposition.

In a dispute between two sets of directors of a nonstock corporation, the Court held that election of directors was governed by Code § 13.1-855(D) of the Act, and that the circuit court had no jurisdiction to elect or appoint directors. We rejected "the respondents' argument that the chancellor, exercising his equitable jurisdiction, is empowered to declare the respondents the lawful directors. Under the facts and circumstances of this case, the chancellor has no statutory authority to elect directors." 251 Va. at 114, 465 S.E.2d at 786.

19

In sum, the General Assembly has provided in Code § 13.1-813 that "[n]o court within or without Virginia . . . shall have jurisdiction to review, reverse, correct or annul any action of the Commission, within the scope of its authority . . . or to enjoin, restrain or interfere with the Commission in the performance of its official duties."  If circuit courts, at the request of the Attorney General, are to have subject matter jurisdiction over claims like those made in this suit, the General Assembly has the power to so provide, as it did in Code § 55-432 when it authorized the Attorney General to exercise his common law authority regarding certain nonprofit health care entities.  Under the existing common law and present statutory scheme, however, the circuit court lacks subject matter jurisdiction over this suit.

Consequently, finding that the trial court did not err in denying the plaintiffs' motion for a preliminary injunction and appointment of a receiver, the May 2001 order will be affirmed.[*]

                                              Affirmed.

JUSTICE LEMONS, with whom JUSTICE KOONTZ and JUSTICE KINSER, join dissenting.

_____

[*] We have not overlooked that the chancellor, at the urging of all parties, reluctantly indicated that he would order an accounting, noting that such action could be viewed as inconsistent with his ruling on jurisdiction.  No accounting is provided for in the May 2001 order, nor do we find any such written order in this record.  Therefore, the effect, if any, of such a ruling on the issue we have decided is not before us, and we express no opinion on it.

20

Because I believe that the circuit court has subject matter jurisdiction over this controversy, I respectfully dissent.

The majority opinion holds that the circuit court would have jurisdiction over this action brought by the Attorney General if the entity involved were a trust rather than a corporation. However, it is the nature of the claim not the form of the entity involved in the claim that is dispositive. The public interest in the proper disposition of charitable assets is the same irrespective of the form of the entity entrusted with the assets. Furthermore, we have previously stated that a charitable corporation in this context is, essentially, a trust. Finally, while the State Corporation Commission may have jurisdiction over some of the claims in this action, its jurisdiction is not exclusive.

In Tauber v. Commonwealth, 255 Va. 445, 499 S.E.2d 839 (1998), we stated in broad terms the authority of the Attorney General to proceed in precisely the manner chosen in this case. Although the Tauber case involved the assets of a dissolved corporation, we stated the holding in terms of the nature of the claim rather than the form of the entity: "This court long ago recognized the common law authority of the Attorney General to act on behalf of the public in matters involving charitable assets." Id. at 451, 499 S.E.2d at 842.

The reason for such broad language is found in the cases cited by the Court in <u>Tauber</u>. In <u>Hanshaw v. Day</u>, 202 Va. 818, 120 S.E.2d 460 (1961), the Court noted:

> The corporation was organized for charitable or benevolent or literary purposes. Contributions made to it and the assets realized therefrom were dedicated to those purposes and stamped with a public interest by the charter, the laws of this State, sound reason and public policy. The members acquired no property rights in, nor were they equitably entitled to such assets, either during the lifetime of the corporation or upon dissolution. To hold otherwise would convert the public nature and purpose of the corporation into a vehicle for the personal pecuniary gain of the members.

<u>Id.</u> at 824, 120 S.E.2d at 464, quoted with approval in <u>Tauber</u>, 255 Va. at 455, 499 S.E.2d at 845.

Also cited favorably by the Court in <u>Tauber</u> was the prior decision in <u>Clark v. Oliver</u>, 91 Va. 421, 22 S.E. 175 (1895). In that case dealing with funds diverted from one charitable cause to another charitable cause, we rejected a claim by a contributor and stated:

> [W]hatever jurisdiction is thereafter entertained by the courts with respect to the disposition and control of this fund, must be called into active exercise either by the Attorney General, acting upon behalf of the public, or by the trustees charged with its custody and  administration, or by some person having a beneficial interest in the object of the trust.

<u>Clark</u>, 91 Va. at 427-28, 22 S.E. at 177.

22

The majority opinion states that Code § 55-532 authorized the Attorney General to exercise his common law and statutory authority regarding certain nonprofit health care entities and further states that "no such specific power has been granted by the legislature regarding nonprofit corporations devoted to charitable purposes." The interpretation misreads the plain import of the statute. The common law right of the Attorney General to act in matters involving charitable assets is so well accepted that the General Assembly recognized the right when it enacted Code § 55-532 concerning the disposition of assets by certain nonprofit health care entities. 1997 Va. Acts ch. 615. In the section involving notice of intent to dispose of assets, the statute provides in part: "The notice shall be given at least sixty days in advance of the effective date of such proposed transaction in order that the Attorney General may exercise his common law and statutory authority over the activities of these organizations." Far from limiting the Attorney General's rights, this statute refers to and affirms the broad power of the Attorney General irrespective of the form of the entity. Certainly, such a construction of the statute is required by the language of Code § 1-10 which provides: "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and

23

be the rule of decision, except as altered by the General Assembly."  Although the General Assembly may abrogate the common law, its intent to do so must be plainly manifested. Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992). The language of Code § 55-532 does not plainly manifest an intent to abrogate the common law.  To the contrary, it refers to and affirms the broad powers of the Attorney General at common law to act in matters relating to the disposition of charitable assets irrespective of the form in which they are held.

Additionally, we have recognized that legislative enactments concerning director liability do not abrogate common law duties of the director.  See Simmons v. Miller, 261 Va. 561, 577, 544 S.E.2d 666, 676 (2001); Willard v. Moneta Building Supply, Inc., 258 Va. 140, 151, 515 S.E.2d 277, 284 (1999). Considering Code § 1-10 and the Court's holdings in Miller and Willard, and the plain meaning of the language of § 55-532, it is clear that the General Assembly did not intend § 55-532 to be limiting in nature.

The majority opinion limits the subject matter jurisdiction of the circuit court to the disposition of charitable assets held in the particular form of a trust.  Rejecting the Attorney General's assertion that a nonstock corporation devoted to charitable purposes is essentially a charitable trust, the

24

majority states that: "No direct authority is cited for this proposition and we have found none."  Apparently, the majority has failed to recall the following statement of the law of the Commonwealth in Tauber: "Under Maryland law, property of a charitable corporation is held in trust for the public. Inasmuch Gospel Mission, Inc. v. Mercantile Trust Co. of Baltimore, 184 Md. 231, 40 A.2d 506, 510 (Md. 1945).  Virginia law is the same."  Tauber, 255 Va. at 455, 499 S.E.2d at 845.

Additionally, the majority holds that Code § 13.1-813 provides exclusive jurisdiction in the State Corporation Commission over the claims involved in this case.  The cited provision states as follows:

> No court within or without Virginia, except the Supreme Court by way of appeal as authorized by law, shall have jurisdiction to review, reverse, correct or annul any action of the Commission, within the scope of its authority, with regard to any articles, certificate, order, objection or petition, or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the Commission in the performance of its official duties.

Code § 13.1-813.

The plain language of this statute neither establishes the Commission's jurisdiction over the claims in this case nor divests the circuit court of its common law jurisdiction.  The statute by its terms prevents any other court, except the Supreme Court upon appellate review, from altering action the

25

Commission has taken.  If the Commission has jurisdiction over the claims in this case, it is concurrent with the circuit court.

The circuit court has subject matter jurisdiction over matters pertaining to charitable assets, and the Attorney General has standing to seek judicial intervention to protect the public's interest. Code § 17.1-513 grants the circuit court jurisdiction over chancery matters.  Code § 8.01-620 gives the circuit court jurisdiction to grant injunctive relief.  It is unnecessary in this dissent to address whether each form of relief requested by the Attorney General is authorized by law.

The majority holds that the trial court did not err in its determination that it did not have subject matter jurisdiction over this controversy. I disagree and respectfully dissent.