## CIRCUIT COURT OF STAFFORD COUNTY

American Fire Equipment, Inc.

   v.

Widewater Volunteer Fire
and Rescue Services, Inc.

   v.

Stafford County

August 9, 2007

Case No. (Law) 64987

BY JUDGE ROSSIE D. ALSTON, JR.

This matter came before the Court for trial on the Third-Party Motion for Judgment filed by the Widewater Volunteer Fire and Rescue Services, Inc. The parties presented opening statements and all exhibits were submitted jointly and by stipulation. The Court took the matter under advisement and allowed the parties to submit briefs in lieu of closing arguments in support of their respective positions.

The third-party Plaintiff (hereinafter "Widewater") alleges that the County of Stafford (hereinafter "the County") breached the Fire Services Agreement entered into by the parties, which resulted in $60,000 in damage to Widewater. Specifically, Widewater contends that the County breached paragraph 7 of the Fire Services Agreement, which provides that Widewater "shall have exclusive internal operational control and may run its company in accordance with its charter and by-laws," when the County denied Widewater's request to approve the purchase of a particular pumper and, in so doing, demanded that Widewater return a pumper that it had already

purchased. The County argues that its actions did not constitute a breach of the Fire Services Agreement. According to the County, the grant of "exclusive operational control" does not waive the County's plenary power over volunteer fire companies, nor does it abdicate Widewater's responsibility to comply with both (1) the 1996 resolution requiring Board of Supervisors approval prior to Widewater purchasing equipment and (2) the County's equipment purchasing policies. For the reasons stated below, the Court finds for the County of Stafford.

*Facts*

Widewater and the County of Stafford entered into the Fire Services Agreement (hereinafter "FSA") on April 10, 1998. Paragraph 7 of the FSA reads as follows:

> Each fire company shall have exclusive internal operation control and may run its company in accordance with its charter and by-laws, except as indicated in paragraph 8 below; provided, however, that any provisions which violate the Code of Stafford and established County policies shall be void.

On May 22, 2003, Chief Abel of Widewater appeared before the Fire and Emergency Medical Services Commission. (J.E. 6.) Chief Abel approached the Commission on Widewater's interest in purchasing a new pumper using money it raised from various functions to replace their current pumper, "Engine 10"; however, it does not appear from the Commission minutes that any decision with regard to Widewater purchasing the pumper was made at that time. (J.E. 6.) Rather, it was decided that Commissioner Chuck Thompson would ask the Central Garage to prepare a recommendation regarding the replacement of Engine 10 and that the recommendation would be reviewed by an advisory group and forwarded to the Commission thereafter. (J.E. 6.) Furthermore, a Commissioner expressed concern that Widewater had not followed the procedures of submitting the equipment request to the Advisory Committee and the Commission. (J.E. 6.) Subsequently, on August 18, 2003, Widewater entered into a contract to purchase a fire truck from American Fire Equipment, Inc., for $406,341.00. (J.E. 17.) The Central Garage did not issue a recommendation regarding Engine 10 to Chuck Thompson until January 6, 2004. (J.E. 19.)

Widewater took possession of the new fire truck on April 7, 2004. On April 24, 2004, the Board of Supervisors for the County of Stafford adopted a formal resolution denying Widewater's request to purchase the subject fire truck on credit. (See R04-191, J.E. 7a.) In the April 20, 2004, Resolution (R04-191), the County cited that the proposed purchase was not in compliance with the County's equipment policy and also noted that, pursuant to a 1996 Board of Supervisors resolution, Widewater needed approval for the purchase of equipment on credit. (J.E. 7a.) On April 20, 2004, the County Board of Supervisors passed a second resolution calling for the resignation of the president and board of directors of Widewater. (J.E. 7c.) According to Chief Abel, the County also threatened to cut off funding to Widewater if it received the fire truck because Widewater did not "go through the proper chain of command." (J.E. I.)

Subsequently, Widewater returned the fire truck. On January 4, 2005, the Board of Supervisors for the County of Stafford approved the purchase of a new truck for Widewater at a price of $354,459.00. (J.E. 13.)

*Analysis*

Widewater contends that the County breached paragraph 7 of the Fire Services Agreement when it impermissibly interjected itself into Widewater's purchase of a pumper from American Fire Services, Inc. Widewater argues that the County demanded that Widewater return the pumper it purchased and cancel the contract with American Fire Services, Inc. As a result of the County's breach, Widewater submitted to the County's requirements and incurred a loss of $60,000. This Court disagrees.

Under § 27-15.2 of the Code of Virginia, a County Board of Supervisors has the power to provide for the purchase of fire fighting equipment for use within its boundaries. In Stafford County, fire equipment purchasing requests must be submitted to the Fire and EMS Commission for review. (J.E. 6.) In this particular instance, the need to follow such procedures was contemplated by the Fire and EMS Commission at their May 22, 2003, meeting. A recommendation was requested as the result of that meeting; however, the new fire truck was purchased by Widewater before the recommendation was produced. Furthermore, in Stafford County, purchases of fire equipment must also be approved by the County Board of Supervisors. Code of Virginia, § 27-15.2, provides, in relevant part:

The governing body of every city, town, or county shall have power to provide for the purchase, operation, manning, and maintenance of suitable equipment for fighting fires or performing emergency medical services in or upon the property of the city, town, or county and of its inhabitants. . . .

An agreement between a volunteer fire company and a county cannot restrict a county's plenary authority granted to the county by statute. See *Fortsmouth Volunteer Fire Dept., Inc. v. Warren County Supervisors*, 49 Va. Cir. 377 (1999) (holding that a contract between the County and a fire department "cannot restrict the absolute right granted to the Board of Supervisors to dissolve the fire company"). In the *Fortsmouth* case, a volunteer fire company alleged that the Warren County Board of Supervisors breached the contract between the parties by intervening in the internal affairs of the fire company in passing a resolution that required the dissolution of the fire company unless the Board of Directors resigned. The Court in the *Fortsmouth* case noted that the parties' Fire Services Agreement does not restrict the Board of Supervisors' plenary power to dissolve the fire company for any reason.

The case at issue in this matter is similar to *Fortsmouth*. While the Fire Services Agreement between Widewater and the County provides "exclusive internal operational control" to Widewater, this provision was not violated by the County's exercising its absolute right to oversee the purchase of fire fighting equipment for use within the County. Furthermore, it is clear that "exclusive internal operational control" meant that Widewater had the exclusive ability to oversee the day to day operations of the fire company. The County's denying an application for credit purchase, requesting the removal of the board of directors of Widewater, and even suggesting that funding may be ceased if the purchased equipment was not returned does not constitute an impermissible "interference" such that a breach of the Fire Services Agreement occurred.

Moreover, the only evidence that tends to suggest that the County demanded Widewater return the previously purchased fire truck is the deposition testimony of Chief Abel in which the Chief states that the County threatened to eliminate Widewater's funding if the truck was not returned. Under § 27-10 of the Code of Virginia, a county board of supervisors has the authority to dissolve a fire company for any reason. The Fire Services Agreement does not deprive the Board of the authority it derives under § 27-10 of the Code of Virginia. See *Fortsmouth Volunteer Fire Dept., Inc. v. Warren County Supervisors*, 49 Va. Cir. 377 (1999).

While the County may have threatened to revoke funding and, in effect, dissolve Widewater, such action would not constitute a breach of the Fire Services Agreement because the County has the plenary power pursuant to § 27-10 of the Code of Virginia to dissolve Widewater. The County, however, did not dissolve Widewater and instead restructured Widewater by calling for the resignation of its board of directors, citing serious concerns over the operational capacity of the current arrangement. (J.E. 7c.)

As there was no breach of the Fire Services Agreement by the County, the remaining basis for the suit alleging an impermissible interjection by the County would be a claim of intentional interference with a contract by the County. However, as such a claim sounds in tort, it is not a viable theory in the matter at hand as counties, with limited exception, enjoy sovereign immunity from tort claims. *Mann v. County Board of Supervisors*, 199 Va. 169, 98 S.E.2d 515 (1957).

As such, the Court finds that there was no breach of the Fire Services Agreement by the County of Stafford.