PRESENT:  All the Justices

DUMFRIES-TRIANGLE RESCUE
SQUAD, INCORPORATED

v.  Record No. 191000

BOARD OF COUNTY SUPERVISORS
OF PRINCE WILLIAM COUNTY

OPINION BY
JUSTICE CLEO E. POWELL
OCTOBER 22, 2020

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Steven S. Smith, Judge

In this appeal, we consider whether the Board of County Supervisors of Prince William

County, Virginia (the "Board") had the authority to dissolve the corporate status of Dumfries-

Triangle Rescue Squad, Incorporated ("DTRS").  For the following reasons, we will reverse the

judgment of the Circuit Court of Prince William County ("circuit court").

I.  BACKGROUND

DTRS was registered with the State Corporation Commission ("SCC") in 1959 as a

Virginia non-stock corporation under "the provisions of Chapter 2 of Title 13.1."  The articles of

incorporation list the purposes of DTRS: "[t]o assist in the saving of life, administer first aid and

teach methods of safety."

DTRS is the fee simple owner of real property (the "Graham Park Property"), valued at

$1,625,100 on a 2018 tax assessment, from which it operated its emergency medical services

("EMS") station.  The Graham Park Property was originally four separate parcels of land

accumulated by DTRS from 1969 through 1984.  Upon the purchase of the fourth parcel, DTRS

filed an Owner's Consolidation and Dedication on October 27, 1984, creating a unified 2.6805-

acre parcel. The Graham Park Property includes the real property, the EMS station and other accessory structures.

Over the years since its incorporation, DTRS entered into various contracts with the Board to provide emergency medical services for Prince William County. The record, however, does not disclose when DTRS began contracting with the Board. Pursuant to the August 27, 2009 contract, DTRS agreed to provide fire and/or rescue services in compliance with all applicable regulations in exchange for receiving public funds.

On August 1, 2017, the Board established the Prince William County Fire and Rescue System. In October 2017 and January 2018, the Board adopted resolutions numbered 17-526 and 18-049 (the "resolutions") terminating their 2009 agreement with DTRS and dissolving the corporate status of DTRS. The Board cited Code §§ 27-10[1] and 32.1-111.4:7(D) as authorization for its ability to dissolve DTRS.[2]

In July 2018, the Board filed a complaint for declaratory judgment against DTRS asserting that the Board had the authority to dissolve DTRS's corporate status under Code § 32.1-111.4:7(D). The Board asked the circuit court to issue temporary and permanent injunctions enforcing the resolutions against DTRS. The Board also requested that the circuit court appoint a receiver to liquidate and distribute DTRS's remaining corporate assets and to

---

[1] The parties later stipulated that "DTRS has never been a 'fire company' or 'fire department' as that term is used" in Code § 27-10.

[2] Since October 2017, DTRS has allowed the County Fire and Rescue System to use the Graham Park Property, for free, to provide services to the County until the dispute between DTRS and the Board is resolved.

wind up its affairs, specifically requesting the liquidation and/or distribution of the Graham Park Property and its buildings.[3]

DTRS filed a demurrer and plea in bar arguing that the complaint failed to state a claim against DTRS and was barred because the Board did not have the power to dissolve a private nonstock corporation and assume ownership of its real property. The Board continued to argue that it did have the power to dissolve DTRS under Code § 32.1-111.4:7(D). The circuit court held a hearing and overruled the demurrer, finding that the Board "ha[d] plenary power to" dissolve the "corporate entity itself." Specifically, the court entered an order overruling the demurrer stating,

> pursuant to [Code] § 32.1-111.4:7(D), [the Board] has the plenary power to dissolve the corporate existence of a volunteer emergency medical services agency or rescue squad, incorporated pursuant to Chapter 10 of Title 13.1, Va. Code Ann., which operates under the authority of the Board, pursuant to [Code] § 32.1-111.4:7.

The Board filed a motion for summary judgment asserting that it had the statutory authority under Code § 32.1-111.4:7(D) to dissolve DTRS and wind up its corporate affairs. The circuit court held a hearing regarding the motion for summary judgment and DTRS's plea in bar. During the hearing, the Board argued that *Hanshaw v. Day*, 202 Va. 818 (1961), stands for the proposition that the Board can exercise its police powers to distribute DTRS's assets "so as to insure their continued use for public and civic purposes." DTRS argued that because the Board had no authority to dissolve the corporate status of DTRS, it therefore had no authority to distribute DTRS's property and assets.

The circuit court denied the plea in bar, stating that DTRS's "very existence is at the whim if you will of the County, but then they have the authority as well to assume or to force

---

[3] DTRS had previously transferred some of its assets representing the totality of its personal property to the County.

3

this dissolution." The court entered a permanent injunction, finding that Code § 13.1-907(A)(3)[4]

applied due to the "eleemosynary as well as benevolent" purposes of DTRS and its assets.

The final order reflects the circuit court's determination that DTRS constituted an "EMS

agency, incorporated pursuant to Article 13 of Title 13.1, Va. Code Ann.," which "entered into

an agreement with the Board" to provide EMS services. The court also found that DTRS was a

non-governmental "EMS agency" due to

> its long term service as an arm of the Board and a member of the
> fire and rescue system, created by ordinance of the Board, and its
> long standing contractual relationship with the Board, under which
> it has submitted itself to the authority of the Board in exchange for
> receiving public funds for its operation.

The court further held that DTRS was "subject to the control and management of the Board

pursuant to [Code] § 32.1-111.4:7." The circuit court determined that because DTRS was "[a]

non-stock corporation set up to provide rescue services to the public under the laws of Virginia

[it] cannot exist without the approval of the Board . . . [and] was, therefore, subject to the

corporate dissolution authority of the Board pursuant to [Code] § 32.1-111.4:7(D)." The circuit

court appointed a receiver, pursuant to Code § 13.1-910, to wind up DTRS's corporate affairs as

---

[4] Code § 13.1-907(A)(3) provides:

> A. The assets of a corporation in the process of dissolution shall be
> applied and distributed as follows: . . . . 3. Assets received and
> held by the corporation subject to limitations permitting their use
> only for charitable, religious, eleemosynary, benevolent,
> educational or similar purposes, but not held upon a condition
> requiring return, transfer or conveyance by reason of the
> dissolution, shall be transferred or conveyed to one or more
> domestic or foreign corporations, societies or organizations
> engaged in activities substantially similar to those of the dissolving
> corporation, pursuant to a plan of distribution adopted as provided
> in this Act or as a court may direct[.]

4

requested by the Board. DTRS's motion to stay execution of the final order pending appeal was denied by the circuit court.

DTRS appealed to this Court and moved to stay execution of the final order. The Court granted the motion to stay execution of the final order and awarded DTRS this appeal.

## II. ANALYSIS

On appeal, DTRS argues that the Board lacked the authority to dissolve DTRS's corporate status under Code § 32.1-111.4:7(D) because it was incorporated under Title 13.1 and not Title 32.1. The Board argues the opposite, asserting that Code § 32.1-111.4:7(D) does give them the power to dissolve DTRS because it was an EMS agency.

"Whether a municipality has the power to act is a question of law we review de novo." *Bragg Hill Corp. v. City of Fredericksburg*, 297 Va. 566, 578 (2019). "The Dillon Rule of strict construction controls our determination of the powers of local governing bodies." *Id.* (quoting *Marble Techs., Inc. v. Hampton*, 279 Va. 409, 417 (2010) (citation and internal quotation marks omitted)). We have consistently applied Dillon's Rule, which provides that local governing bodies, like the Board, "have only those powers that are (1) expressly granted by the General Assembly, (2) 'necessarily or fairly implied' from those express powers, and (3) 'essential to the declared objects and purposes' of the municipality." *Id.* (quoting *Chesapeake v. Gardner Enters.*, 253 Va. 243, 246 (1997)). "If there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." *Board of Supervisors v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995).

"In applying the Dillon Rule, we first examine the plain terms of the legislative enactment to determine whether the General Assembly expressly granted a particular power to the municipal corporation." *Marble Techs., Inc.*, 279 Va. at 418. "If the power is not expressly

5

granted, we then 'determine whether the power . . . is necessarily or fairly implied from the powers expressly granted by the statute.'" *Id*. (quoting *Gardner Enters*., 253 Va. at 247). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc*., 273 Va. 96, 104 (2007).

Code § 32.1-111.4:7(D) provides:

> An emergency medical services agency *established pursuant to this section* may be dissolved when the local governing body of the county, city, or town in which the emergency medical services agency is located determines that the emergency medical services agency has failed, for three months successively, to have or keep in good and serviceable condition emergency medical services vehicles and equipment and other proper implements, or when the governing body of the county, city, or town for any reason deems it advisable.

(Emphasis added.) Based on the plain language of Code § 32.1-111.4:7(D), a local governing body, like the Board, may only dissolve an emergency medical services agency if it was "established pursuant to" that section. DTRS was not "established pursuant to" Code § 32.1-111.4:7. Rather, pursuant to its Articles of Incorporation, it was established under Title 13.1 as a private, nonstock corporation. Indeed, it could not have been "established pursuant to" Code § 32.1-111.4:7 because DTRS existed as a corporation registered with the SCC since 1959, well prior to the enactment of Code § 32.1-111.4:7. Moreover, after the Board severed its contractual relationship with DTRS, DTRS continued as a private, nonstock corporation, in good standing with the SCC. Because DTRS was not incorporated pursuant to Code § 32.1-111.4:7, the Board could not rely on that authority to dissolve its corporate status.[5]

---

[5] While the Board bases its entire argument on the premise that Code § 32.1-111.4:7(D) allowed it to dissolve the corporate status of DTRS, we also note that nothing in the provisions of Title 13.1 granted the Board the express or implied power to dissolve the corporate status of DTRS.

In addition to not being established pursuant to that Code section, as it is incorporated, DTRS is not the type of entity that is subject to dissolution under that section. Code § 32.1-111.4:7(D) expressly provides for the dissolution of an emergency medical services agency. An "emergency medical services agency" or "EMS agency" is defined as

> any person engaged in the business, service, or regular activity, whether for profit or not, of rendering immediate medical care and providing transportation to persons who are sick, injured, wounded, or otherwise incapacitated or helpless and that holds a valid license as an emergency medical services agency issued by the Commissioner in accordance with § 32.1-111.6.

Code § 32.1-111.1. DTRS was not just an emergency medical services agency. Under its Articles of Incorporation, in addition to providing emergency medical services, it was established to also "teach methods of safety." The only service entered into "pursuant to" Code § 32.1-111.4:7(D) and therefore regulated by the Board was its provision of emergency medical services for the citizens of Prince William County. Because DTRS's relationship with the Board was limited to the provision of emergency medical services to the citizens of Prince William County, that was the only aspect of its operations that the Board could dissolve. Therefore, the Board had no express authority to dissolve DTRS's corporate status.

Nor do we find that the Board's authority to dissolve DTRS's corporate status was necessarily implied. "A necessary implication is '[a]n implication so strong in its probability that anything to the contrary would be unreasonable.'" *Cuccinelli v. Rector*, 283 Va. 420, 429 (2012) (quoting Black's Law Dictionary 822 (9th ed. 2009)). "[T]he doctrine of implied powers should never be applied to create a power that does not exist or to expand an existing power beyond rational limits." *Commonwealth v. Board of Arlington County*, 217 Va. 558, 577 (1977). Here, the plain language of the statute – referring to entities "established pursuant to this

7

section" – is so strong as to preclude the Board's claimed authority by necessary implication. Code § 32.1-111.4:7(D) retains its logical and practical significance and effect even when it is recognized that its plain meaning and implications do not authorize the Board to dissolve the corporate status of an entity that pre-existed the very statute upon which the Board relies and which is incorporated to perform other functions in addition to the one authorized by the Board. We therefore do not find that the authority to dissolve the corporate status of DTRS exists by necessary implication.

We emphasize, however, that the Board's lack of authority to dissolve DTRS's corporate status does not affect the Board's power to cease contracting with DTRS for emergency medical services. Code § 32.1-111.4:7(D) allows the Board to freely dissolve its contractual relationship with DTRS regarding emergency medical services. It remains true, however, that Code § 32.1-111.4:7(D) does not expressly or impliedly authorize the Board to dissolve the corporate status of DTRS as it was not "established pursuant to" that Code section.

Nevertheless, the Board argues that it had the power to dissolve DTRS under Code § 32.1-111.4:7(D) because DTRS was organized "consistent with" that Code section and the General Assembly may regulate corporate functions through legislation, as we held in *Hanshaw v. Day*, 202 Va. 818 (1961). The Board is correct that *Hanshaw* stands for the proposition that the General Assembly can adopt legislation that "under its police power, [] supervise[s], regulate[s] and limit[s] the exercise of corporate functions by appropriate legislative changes." *Hanshaw*, 202 Va. at 823. The principle announced in *Hanshaw*, however, does not come into play in this case for the simple reason that the statute at issue does not apply to DTRS. Even if DTRS was organized "consistent with" Code § 32.1-111.4:7(D) as stated by the Board, it was clearly not "established pursuant to" Code § 32.1-111.4:7(D). We cannot conflate the phrase

8

"established pursuant to" as used by the General Assembly with "organized consistent with" as alleged by the Board. "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990).[6]

Finally, the Board also relies on three circuit court cases: *Fortsmouth Vol. Fire Dep't v. Warren County*, 49 Va. Cir. 377 (Warren Cir. Ct. 1999); *American Fire Equipment Inc. v. Widewater Fire & Rescue Services*, 74 Va. Cir. 101 (Stafford Cir. Ct. 2007); and *Board of County Supervisors v. Shenandoah Farms Vol. Fire Dep't, Inc.*, No. CL 002447 (Clarke Cir. Ct. 2013) (orders granting a temporary injunction and declaratory judgment), to support its argument that the circuit court was correct in finding that the local governing body had plenary power over DTRS because it contracted with the County. We are not bound by these circuit court opinions, nor do we find these decisions persuasive. Each of these cases involved a locality dissolving a local fire company under Code § 27-10[7] which provides several reasons for a local governing

---

[6] Having found that DTRS was not dissolved, we need not reach the issue of how DTRS's remaining corporate assets, specifically, the Graham Park Property, should be distributed.

[7] Code § 27-10 provides:

> Whenever the fire department of the county, city, or town to which any fire company belongs ascertains that such company has failed, for three months successively, to consist of 20 effective members, or ascertains that it has failed for the like period to have or keep in good and serviceable condition an engine, hose, and equipment and other proper implements, or the governing body of the county, city, or town for any reason deems it advisable, such governing body may dissolve the fire company.

body to dissolve a fire department. Code § 27-10 does not contain any language limiting the local governing body's actions to only fire departments created pursuant to that Code section. Compare the provisions of Code § 27-10 and its lack of any limiting language with Code § 32.1-111.4:7(D), where the General Assembly chose to include the phrase "established pursuant to this section" when addressing dissolution of an EMS agency by the local governing body. "We . . . presume the legislature chose, with care, the words it used when it enacted the relevant statute[s]." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011) (citation and internal quotation marks omitted)). Clearly, then, Code § 27-10 establishes that the General Assembly knows how to draft a statute such that it imposes no limit on a locality's ability to dissolve an entity that provides emergency services to the locality. The fact that the General Assembly instead used language imposing such a limit with respect to EMS agencies in Code § 32.1-111.4:7(D) is indicative of its intent to achieve a different result. *See, e.g.*, *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004) (use of language in one enactment that is "[s]trikingly absent" from another "represents an unambiguous manifestation of a contrary intention" in that enactment); *Oraee v. Breeding*, 270 Va. 488, 508 (2005) (same).

Accordingly, we hold that the circuit court erred in finding that the Board could dissolve the corporate status of DTRS pursuant to Code § 32.1-111.4:7(D) since DTRS is not an agency "established pursuant to" that Code section.

### III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court based upon the erroneous legal conclusion that the Board had the power to dissolve the corporate status of DTRS pursuant to Code § 32.1-111.4:7(D). The circuit court therefore erred as a matter of law

10

by granting summary judgment, declaratory judgment, issuing a permanent injunction, and in appointing a receiver to wind up the corporate affairs of DTRS.

*Reversed and final judgment.*